WALTER C. NELSON

*v.*

CHARLES F. MILLIGAN *et al.*

*Filed at Ottawa, June 19, 1894.—Rehearing denied, October Term, 1894.*

1. NUISANCE—*abating by injunction—when jurisdiction is exercised.*
The restraining power of courts of equity by injunction, may be in--
voked by a private individual to prevent a special injury by the erec-
tion or continuance of a nuisance.  But this jurisdiction is always re-
luctantly exercised until the nuisance has been found to exist by a jury,
and never, unless both the nuisance and the resulting injury are clearly
shown by the evidence.

2.  The question, what is a nuisance, is one peculiarly fitted for the
investigation of a jury, and, in an ordinary case, when the event of a
suit in equity depends on a legal right, that right must be ascertained,
in an action at law, before any relief can be granted in a court of equity.

3.  Where there is good reason to conclude that the nuisance com-
plained of is temporary, the court will not grant a temporary injunction,
in order that the plaintiff may bring an action at law, which may be
nugatory.  A mere diminution of the value of property by the nuisance,
without irreparable mischief, will not furnish any ground for equitable
relief.

4.  On a bill to enjoin the keeper of a hotel from permitting dense
smoke, dust and soot, to be emitted from the chimneys of his hotel,
whereby the complainant's carpets, curtains, draperies, etc., were in-
jured, the proof showed that the defendant, in carrying on his business,
was temporarily compelled to use coal which produced a dense smoke,
to the injury of complainant, but that the injury was not a permanent
one, but was one that could be compensated by an action at law; it was
held that a court of equity had no jurisdiction to interfere, there being
an adequate remedy at law.

APPEAL from the Appellate Court for the First District;
—heard in that court on appeal from the Superior Court of
Cook County; the Hon. PHILIP STEIN, Judge, presiding.

Messrs. WOLSELEY & HEATH, for the appellant:

"A private nuisance is defined to be anything done to
the hurt or annoyance of the lands, tenements or heredita-

ments of another. (3 B. Com. 216..) Any unwarrantable, unreasonable or unlawful use by a person of his own property, real or personal, to the injury of another, comes within the definition stated." *Laflin* v. *Tearney*, 131 Ill. 326; *Calef* v. *Thomas*, 81 id. 480; *Ottawa Gas Company* v. *Thompson*, 39 id. 600.

"Whatever is offensive physically to the senses, and by such offensiveness makes life uncomfortable, is a nuisance." *Wahle* v. *Reinbach*, 76 Ill. 327 ; *Seacord* v. *People*, 22 Ill. App. 281, 282.

"The doctrine now is that a nuisance may be at the same time both public and private. The use of a steam engine in a crowded street may be a public nuisance. But in the case where the smoke from it also injures the goods in a man's shops, and made his dwelling uncomfortable, it was held to be such a private nuisance as would give him a right of action." *Wylie et al.* v. *Elwood*, 134 Ill. 287.

As to what constitutes a private nuisance that equity will enjoin, see *Crump* v. *Lambert*, L. R., 3 Eq. Cases, 412; *Ross* v. *Butler*, 19 N. J. Eq. 298; *Duncan* v. *Hayes*, 22 id. 27; Woods' Law of Nuisance, 1st Ed., sec. 441; 3 Pomeroy Eq. Jur., sec. 1350; *Gardner* v. *Village, etc.*, 2 John. Ch. 164; *Switzer* v. *McCulloch*, 76 Va. 777; High on Injunc., sec. 772.

We particularly refer the court to the following cases, all of which were bills filed for injunctions against the emission of smoke, and in which the questions arising in this case have been fully discussed: *Galbraith* v. *Oliver*, 3 Pitts (Pa.), 78, 85; *Ross* v. *Butler*, 19 N. J. Eq. 294; *Sampson* v. *Smith*, 2 Simons, 272; *Crump* v. *Lambert*, L. R., 3 Equity Cases, 412.

The remedy by injunction is more adequate than any action of a court at law. Hilliard on Injunctions, 2d Ed. 324; *Wahle* v. *Reinbach*, 76 Ill. 327; *Benris* v. *Upham*, 13 Pick. 171.

It is not necessary to establish the nuisance by an action at law, before the court should grant an injunction. Woods' Law of Nuisance, sec. 429; *Gardner* v. *Village, etc.*, 2 John. Ch. 429.

If the plaintiff's title to the subject-matter affected by the wrong is admitted, a court of equity will exercise its jurisdiction at once, and will grant full relief, without compelling him to resort to a prior action at law. 1 Pomeroy's Eq. Jur., sec. 252.

In cases where the plaintiff has been long in the exercise of his right, or where delay would be disastrous, the court will not require the right to be first established at law. 2 Story Eq. Jur., sec. 935*f.*

"It is equally well settled, that if the title of the complainant is not disputed, and the injury is clear, it is not necessary that the fact of nuisance should be first established by a verdict at law. *Shields* v. *Arndt*, 3 Green's Chy. 234; *Holsman* v. *Bleaching Co.*, 1 McCarter, 343; *Ross* v. *Butler*, 4 C. E. Green, 294. The opinion of the Court of Appeals, in *Carlisle* v. *Cooper*, 6 C. E. Green, 580; *Crump* v. *Lambert*, L. R., 3 Eq. Cases, 409; *Walter* v. *Selfe*, 4 De Gex. & Sm. 315, and many other cases, hold this doctrine." *Duncan* v. *Hayes*, 22 N. J. Eq. 27.

In *Minke* v. *Hopeman*, 87 Ill. 450, a bill was filed to enjoin the carrying on a slaughter-house business in an offensive manner. The identical point now under discussion was raised by the appellant in that case.

Messrs. G. W. & J. T. KRETZINGER, for the appellees:

As to what is a private nuisance, see *Harmon* v. *Chicago*, 110 Ill. 406; *Marshall Field & Co.* v. *Chicago*, 44 Ill. App. 410; *C., B. & Q. R. R. Co.* v. *Schaffer*, 124 Ill. 117; *C. & E. I. R. R. Co.* v. *McAuley*, 121 id. 160.

A public nuisance must be established by clear evidence, before the preventive remedy will be granted. A public nuisance will also be restrained at the suit of a private per-

son who suffers therefrom a special and particular injury, distinct from that suffered by him in common with the public at large, but this injury must be real, and such that the legal remedy would not be adequate. Pomeroy's Eq. Jur., secs. 1349, 1350.

A court of equity will always act with reluctance in abating a nuisance, and seldom until it has been found to be such by a jury. *Wahle* v. *Reinbach*, 76 Ill. 325; *Dunning* v. *Aurora*, 40 id. 481; *Bliss* v. *Kennedy*, 43 id. 67.

Appellant is confined to his bill of complaint, and the allegations therein contained and the affidavits in support thereof, and neither established damages of an irreparable nature, or which can not be fully compensated and relieved in a court of law.

Until the nuisance is established by an action at law in a trial by a jury, a court of equity will not grant an injunction, unless the nuisance is admitted, or irreparable injury is alleged and clearly proved. *Oswald* v. *Wolf*, 129 Ill. 200; *Nelson* v. *Clark*, 44 Ga. 617.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the Court:

This was a bill, by appellant against appellees, in the Superior Court of Cook county, filed on the 31st of December, 1892, for injunction. The cause was heard on bill, answer, and affidavits filed in support of each, the parties agreeing that they should be given the same weight as depositions. The Superior Court granted the prayer of the bill, but the Appellate Court reversed that decree, and remanded the cause with instructions to dismiss the bill, and the complainant now brings the record to this court.

The injury complained of by the bill, sought to be enjoined, is permitting dense smoke, dust and soot to be emitted from the chimneys of defendants' hotel, which is cast upon and into the doors and windows of complainant's dwelling house,

to the injury of his carpets, curtains, draperies, etc., and to the annoyance and discomfort of himself and family residing therein.

If the relief prayed can be granted at all, it must be upon the ground that defendants are guilty of maintaining a nuisance, to the injury of complainant, and the question for our decision is, does the case made by the bill and proofs fall within the jurisdiction of a court of chancery.

All the authorities agree, that the restraining power of courts of equity, by injunction, may be invoked by a private individual, to prevent a special injury by the erection or continuance of a nuisance. But it is equally well settled, that the jurisdiction is always reluctantly exercised, until the nuisance has been found to exist by a jury, and never, unless both the nuisance and the resulting injury are clearly shown by the evidence. Thus, it is said in Story's Equity Jurisprudence, vol. 2, sec. 924*a*: "But in all cases of this sort, courts of equity will grant an injunction to restrain a public nuisance only in cases where the fact is clearly made out upon determinate and satisfactory evidence. For, if the evidence be conflicting, and the injury to the public doubtful, that alone will constitute a ground for withholding this extraordinary interposition. And, indeed, the same doctrine is equally applicable to cases of private nuisance. But when private individuals suffer an injury quite distinct from that of the public in general, in consequence of a public nuisance, they will be entitled to an injunction and relief in equity, which may thus compel the wrongdoer to take active measures against allowing the injury to continue." And again, "In regard to private nuisances, the interference of courts of equity, by way of injunction, is undoubtedly founded upon the ground of restraining irreparable mischief, or of suppressing oppressive and interminable litigation, or of preventing multiplicity of suits. It is not every case which will furnish a right of action against a party for a nuisance, which will justify the inter-

position of courts of equity to redress the injury or to remove the annoyance. But there must be such an injury as, from its nature, is not susceptible of being adequately compensated by damages at law, or such as, from its continuance or permanent mischief, must occasion a constantly recurring grievance, which can not be otherwise prevented but by an injunction. Thus it has been said, that every common trespass is not a foundation for an injunction, where it is only contingent, fugitive, or temporary. But if it is continued so long as to become a nuisance, in such a case an injunction ought to be granted, to restrain the person from committing it. So, a mere diminution of the value of the property by the nuisance, without irreparable mischief, will not furnish any foundation for equitable relief.'' Sec. 925. "The question, what is a nuisance, is one peculiarly fitted for the investigation of a jury; and in an ordinary case, where the event of a suit in equity depends upon a legal right, that right must be ascertained in an action at law, before any relief can be granted in a court of equity. But the court will retain the bill until after the trial of the question at law.'' Sec. 925b.

"Where there is good reason to conclude that the present nuisance complained of is temporary, the court will not grant a temporary injunction in order that the plaintiff may bring an action at law, which may be nugatory.'' Sec. 925c.

In harmony with the doctrine here announced are the decisions of this court, in *Laney* v. *Jasper*, 39 Ill. 46; *Dunning* v. *The City of Aurora et al.*, 40 id. 481; *Bliss* v. *Kennedy* 43 id. 67; *Town of Lake View* v. *Letz*, 44 id. 81; *Wahle* v. *Reinbach*, 76 id. 322; *Oswald* v. *Wolf*, 129 id. 200.

Numerous decisions of other courts to the same effect might be cited, but as there is no conflict of authority upon the question there is no occasion for doing so.

Turning to the bill, we find that it does not proceed upon the theory that the hotel of defendants, properly operated, is in any sense a nuisance, but upon the ground that by the use of improper fuel, and the negligent management of the furnaces, dense smoke is emitted from its chimneys and thrown upon the premises of complainant. Thus it is alleged, that upon being urged to prevent the emitting of such smoke, soot, etc., defendants did temporarily comply with the request, and that, upon being convicted under an ordinance of the city, against permitting dense smoke to issue or be emitted from chimneys, they did for a few days prevent the same, but not permanently. It also shows, that the injury is not constant, but occurs "from time to time, and at frequent occurring periods," being greatest when the wind is from the direction of the hotel. It thus appears from the bill itself, that the injury is neither a permanent one, nor the necessary consequence of operating the hotel as constructed, but solely the result of periodical acts of negligence on the part of defendants. The answer expressly denies the wrongful act, that is to say, the permitting of dense smoke to be emitted in perceptible quantities at any time, and sets up, that the Illinois Central Railroad, the Holland Hotel, and a large number of apartment houses and private residences in the same vicinity, consume large quantities of coal, and emit from their chimneys dense smoke, and also deny that the injury complained of in the bill resulted from the use by defendants of improper fuel, and aver that, in the operation and management of their said hotel, they have exercised all diligence and care to prevent the escape of smoke from its chimneys, by employing the best engineers and firemen, and the use of the best smoke consumers; that they have at all times used the highest priced fuel obtainable in the market in their furnaces, and have provided for that purpose "West Virginia coal," which is the cleanest, and produces the least smoke, dust and soot, of any coal which can be practically

used in furnaces; that, being unable to obtain that quality during the months of November and December, 1892, they were compelled to use "Indiana block coal," the next best quality.

While the decree finds that complainant was injured by smoke from the chimneys of the defendants, as alleged in the bill, it also finds that the hotel building can be operated without causing any dense smoke, by the use of proper fuel; that on certain occasions the manager caused certain kinds of fuel to be used, which produced no dense smoke or soot in appreciable quantities, but that, during the months of November and December, 1892, dense smoke frequently issued from the chimneys of said hotel building.

All, then, that can be said from the bill, answer, and findings of the decree, is that, from time to time, prior to the filing of the bill, through the *negligence or wrongful act* of the defendants, complainant was injured in the manner stated in his bill. The decree in effect finds that, while using "West Virginia coal," no appreciable dense smoke was emitted, and there is no conflict in the evidence as to the fact that defendants proposed using that quality of fuel, and had done so when it could be obtained.

While it is true that the consequences of their not being able to get, or unwillingness to use, the better and higher priced quality of coal, can not be visited upon complainant without compensation in damages, it by no means follows that a court of equity will make them liable to its penalties for contempt, if they should be compelled to use the inferior fuel temporarily to avoid abandoning their business. The remedy for such an injury is complete and adequate at law. There is no theory of this case, conceding all that is found in the decree, upon which it can be said an injury is shown which can not be fully ascertained and adequately compensated by damages in an action at law, or which, from its continuance or permanent mischief, will necessarily occasion constantly recurring grievances, which can

not be otherwise prevented than by injunction, and, therefore, upon the authorities cited above, no ground is shown for the exercise of equity jurisdiction.

But, independent of the findings in the decree, the evidence relied upon by complainant to establish the existence of a nuisance, and special injury therefrom, is entirely too unsatisfactory to authorize an injunction. It is scarcely necessary to suggest the difficulty of attempting to settle controverted questions of fact upon mere *ex parte* affidavits. That difficulty has been peculiarly embarrassing in this case, for the reason that the affidavits on either side are unsatisfactory on account of their indefiniteness. Those in support of the bill are by neighbors of the complainant, who swear to the fact that large quantities of smoke escaped almost constantly from the hotel chimneys, which was thrown upon their own houses, and into their doors and windows, etc., but say nothing as to the effect upon the premises of complainant. On the other hand, many similarly situated, made affidavits in support of the answer, in which they swear that no considerable amount of smoke was produced from the hotel, and that they experienced no inconvenience or damage therefrom. For instance, William S. Noyes, in support of the bill, says: "He resides at No. 74, 53d street, Chicago, and has there resided for about three years; that affiant's residence is about 150 feet from the Hyde Park Hotel; that he has frequently observed dense smoke issuing from the chimneys of said hotel, and that he has and still does suffer great annoyance and discomfort from the soot and dust from the chimneys of said hotel; that said smoke, dust and soot has issued almost constantly during the past year from said chimneys, and is a perfect nuisance, and that there is no other building or chimneys that could cause said smoke, dust and soot; that the same has issued in large quantities almost daily."

On the other hand, Ray Kimball, on behalf of the defendants, makes affidavit directly to the contrary. He

says: ''He has resided for several years within one block of the hotel of defendants, and in a place where he can observe the smoke issuing from the railroad trains and the chimneys of said hotel; that the chimneys of said hotel emit no more smoke than other well-regulated steam plants in the immediate vicinity, and that much more smoke comes to the neighborhood of affiant and complainant from the railroad trains than from the chimneys of said hotel; that a great number of trains are passing constantly, all emitting more or less smoke, and dense, black smoke, which falls upon said hotel, and affiant's and complainant's residences alike; that the smoke, dust or soot from said hotel chimneys has never sifted into the dwelling-house of affiant so as to soil his draperies, carpets or household furniture or decorations; that the chimneys of said hotel have not emitted smoke constantly, so as to make the same a nuisance, and dense smoke has not emitted from the chimneys of said hotel in perceptible quantities, except on rare occasions, and then not to an extent to make the same perceptible to the residents of the district or to inconvenience the residents of the district.''

Some of the affidavits filed on behalf of complainant are to the effect that anthracite coal could be successfully used in the hotel furnaces, and in that way all dense smoke avoided; but the clear weight of the evidence is that, for making steam, the use of that quality of coal is impracticable. The evidence also shows, and the decree in effect finds, that it is not necessary to use hard coal in order to prevent the escape of smoke, but that by the use of ''West Virginia coal,'' which was usually used, that purpose could be, and was, accomplished.

The evidence is also undisputed, that during the months of November and December, immediately preceding the filing of the bill, when, as the decree finds, the injury was particularly occasioned, ''Indiana block coal'' was used because the West Virginia could not be obtained in the market.

The evidence, then, in this record, favorably construed for the complainant, shows no more than that the defendants, in carrying on their lawful business, have temporarily been compelled to use, or have at most negligently used, a quality of fuel which produced dense smoke, to the injury of complainant. As before said, for such an injury the remedy at law is complete and adequate. There is nothing in this record to justify the conclusion that there will be occasion to resort to such an action repeatedly. There is, therefore, no occasion for invoking the jurisdiction of a court of equity. This conclusion in no way conflicts with the view, that emitting dense smoke from chimneys may become both a public and private nuisance, nor that cases may not arise where such nuisances will be enjoined. No such case is presented by this record.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*