## Canal Melting Co. v. Columbia Park Co.

1. NUISANCES—*Lawful Occupations, Not Nuisances per se.*—At the present day any lawful occupation can not be spoken of as a nuisance *per se.*

2. SAME—*Jurisdiction of a Court of Equity to Enjoin a Nuisance at the Instance of a Private Party.*—It is well settled that the jurisdiction of a court of equity to enjoin the carrying on of a lawful business at the instance of a private party is always reluctantly exercised, until the nuisance has been found to exist by a jury.

3. INJUNCTIONS—*To Restrain Nuisances—Nature of the Injury Inflicted.*—In order to restrain the carrying on of a rendering establishment in a populous neighborhood, the threatened injury from it must be real, not trifling, transient or temporary. It must be one for which either on account of its essentially irreparable nature, its repetition or continuance, the legal remedy for damages is inadequate. A mere diminution of the value of property by it without irreparable mischief will not furnish ground for equitable relief.

**Bill for an Injunction.**—Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Reversed and remanded with directions. Opinion filed December 24, 1901.

**Statement.**—Appellee, on the 19th day of March, 1897, filed its bill asking that appellant be enjoined from carrying on its business at its factory in the town of Lyons, County of Cook and State of Illinois.

Appellee showed that it owned about sixty acres of land in said town and that it had erected thereon at a great expense, various substantial and costly buildings, to wit, a dance hall, bowling alley, restaurant building, boat house,

toilet and parcel rooms, two ice houses, four refreshment stands and other buildings; also had constructed ball ground, bicycle track, running track, swings, gravel walks and other improvements for picnic purposes; and also owned boats for boating on the Desplaines River and for renting, and had expended on such improvements $30,000, the value of the property, with improvements, being $50,000.

" That the park was generally known as Columbia Park; that since the year 1899, the park company had carried on a profitable business in renting the park to a large number of associations, lodges, churches, clubs, etc., for picnic purposes."

" That within the last four weeks, the Canal Melting Company had constructed a factory about 200 yards from Columbia Park, for rendering and melting dead animals, etc., and that since April 10, 1897, such factory had been used and operated by said Canal Melting Company for rendering dead animals and refuse matter, and garbage procured by the Melting Company from the city of Chicago and other places, and rendering such matter.

" That foul, noisome, disagreeable and sickening odors escape day and night from such factory and pollute the air in and around the park of the complainant; that if the Canal Melting Company is permitted to continue to so operate the factory, complainant's park will be rendered unfit and undesirable for picnic purposes, and complainant's business will be entirely destroyed.

" That the season for leasing the park for picnic purposes extends from the middle of May to the first of October; that during the months of April and May committees examine such park; that already committees from several organizations have visited the park and refused to lease same, because of the foul odors from said factory."

On March 31, 1899, appellee filed a supplemental bill setting forth that on the 19th day of April, 1897, one Schlichting filed a bill in the Circuit Court of Cook County against appellant with charges similar to those of the bill filed on the same day by appellee and praying for the same relief.

That under the bill filed by Schlichting, on May 10, 1897, the Circuit Court found that the business carried on by appellee was a nuisance and enjoined it from carrying on in its said factory its rendering business, "so as to produce,

Canal Melting Co. v. Columbia Park Co.

generate or disseminate any foul and disagreeable odors that may be carried or wafted to the dwelling of said Schlichting, complainant, and from discharging any foul matter from said factory into the waters of the Desplaines river, until the further order of the court."

That thereafter appellant was cited into court to show cause why it should not be attached for violating said order of court; that upon hearing thereof, the court found that appellant had acted in contempt of court and further enjoined it in the premises and ordered that it pay to the complainant, Schlichting, $190 taxed as master's fees, from which order appellant appealed to the Appellate Court for the First District.

The supplemental bill further showed that about September 1, 1898, the appellant, for the sum of $1,000, procured a stipulation from Schlichting to dismiss his bill of complaint, and on November 18, 1897, his bill was dismissed.   The supplemental bill then goes on to charge the carrying on by appellant of its business at said Willow Springs in the town of Lyons, in such a manner as to be a nuisance and damage to appellee since the filing of its original and up to the filing of the supplemental bill, and it insists that its business has been greatly damaged thereby and that it will be irreparably injured, unless appellant be perpetually enjoined from carrying on its rendering business in said factory.

The answer of appellant admits the carrying on of a rendering business as alleged in the bill; alleges that it is under contract to and does receive all dead animals found in or about the streets of Chicago; converts and disposes of the same without cost to said city; that its business is a necessary and proper one, and is not a nuisance; that whatever foul odors and emanations may have come from this factory when first established and at the time said Schlichting filed his bill, by the use of improved methods and appliances, have long since ceased; that appellee has not been injured or its business lessened by anything appellant has done, but that if its business has fallen off it has been because of the

establishment of rival picnic grounds in the same vicinity, which by competition have diverted business from appellee; that the damages alleged in the supplemental bill are of a pecuniary character and such as are recoverable at law; that the premises of appellee were not occupied by any dwelling house or residence, but as an amusement ground, occasionally occupied during the summer months.

Evidence having been heard the court perpetually enjoined appellant from maintaining and operating its factory in the town of Lyons for rendering and melting refuse matter of any kind and description whatever and from treating in any manner whatsoever in said factory any refuse animal matter of any kind or description and from converting in said factory refuse or animal matter into fertilizers or other products, and from bringing and conveying by railroad cars or by any means of transportation to its factory any refuse animals and refuse animal matter and from discharging from its factory into the Desplaines river, by any means whatsoever, animal matter or the washings of said factory, or corrupt and filthy water or polluting liquid, fluid or matter whatsoever.

EDDY, HALEY & MUNROE and PATTISON & SHAW, attorneys for appellant.

GEORGE W. PLUMMER and WHARTON PLUMMER, attorneys for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court.

As to under what circumstances the carrying on of a lawful business will be enjoined at the instance of a private person upon the ground that said business is a nuisance and damaging to a complainant is one of the most delicate questions which can be presented to a court of chancery.

Whatever may have been the rule in former times, we do not think that at the present day any lawful business can properly be spoken of as a nuisance *per se*. Legislatures, and not infrequently cities, may declare certain kinds of business, when carried on in certain places, nuisances, *per se;* when so declared it is quite immaterial in what manner

Canal Melting Co. v. Columbia Park Co.

such business is thereafter carried on, it having ceased to be lawful. Beyond this, while a business may be *prima facie* a nuisance, that is to say, its general character and effect such that in certain neighborhoods, it is therein *prima facie* a nuisance, nevertheless, it may be shown that it is carried on in such a manner that neither health, comfort nor property of any one is injured thereby; that is, that which is done is transacted in such a manner that the lawful right of no one is infringed.

Nor do we think that at this day and in this generation, because a business has in the past been in certain neighborhoods a nuisance, it follows that it will hereafter always be so.

The entire process of manufacturing and treating matter on a great scale has been revolutionized within the last fifty years. Many products, the collection of which at one place in great quantities, half a century ago, necessarily offended the nostrils and sickened the stomachs of those in the immediate vicinity, have by improved methods been so treated and disposed of that, except for the sight thereof, their presence is hardly known to those who live in the immediate vicinity.

A great, if not the principal portion of the profits of all slaughtering, packing and rendering establishments now come, not from the casting aside as useless any portion committed to its care, or polluting streams with the refuse thereof, but from saving and utilizing every portion of the animal; in consequence of which, it is well known that the odors emanating from such establishments are very much less than they were not many years ago.

What science has in store for us—what discoveries and advantages chemistry may bring—it is impossible to say. In view of the wonderful progress of the past, it is certain that we can not say that rendering establishments must for all time be nuisances to dwelling houses and picnic grounds in their immediate neighborhood.

It is well settled that the jurisdiction of a court of equity to enjoin, at the instance of a private party, the carrying

on of a lawful business, is always reluctantly exercised until the nuisance has been found to exist by a jury.    Nelson v. Milligan et al., 151 Ill. 462–466.

The present threatened injury must be real, not trifling, transient or temporary.    It must be one for which either on account of its essentially irreparable nature, or its repetition or continuance, the legal remedy for damages is inadequate.    A mere diminution of the value of the property by the nuisance, without irreparable mischief, will not furnish a foundation for equitable relief.    Pomeroy's Equity Jurisprudence, Secs. 740 and 1350; Nelson v. Milligan et al., *supra*, 467.

In the present case it appears that the majority of the people in the village of Willow Springs where the factory of appellant is situated, approved of its continuance.    A license to carry on its works was granted to it some five years ago and has been annually renewed.

Counsel for appellee complain that the president of the village board was present during the hearing of this cause and aided and assisted appellant.

Under the evidence the case does not appear to us to be one for the appliance of measures so severe and drastic as the perpetual closing up and suppression of the business of appellant.

The finding of the court that the works of appellant are equipped with the best and most approved machinery and appliances, and that the works can not be conducted without the odors complained of escaping and being carried over the premises of the complainant, is not borne out by the evidence.

Complainant's witness, Henry Freese, who was for some time the local foreman at the rendering works of appellant, testified that the works were arranged so that all the odors should lead into a condenser; that if a condenser of that kind got beyond its capacity, it would show it, and that appellant's did in 1898, when there was more work than it could do; that to prevent any accident a vent was put on the top of the condenser; that the condenser could not

handle all the steam that went in there and a pipe was run into the smoke stack and carried the odors with it; that in the spring and summer of 1899, the bodies of animals received at the park showed that they had been left on the streets longer than was proper; that dogs and smaller animals could not be handled without a shovel and they gave off odors; that he testified before the master that the odors were destroyed in the condenser and he again states that that was a fact; that he now claims that the putting this vent from the condenser up into the smoke-stack, simply let so much odor escape into the smoke-stack; that the condenser was not sufficient to take care of the odors; that there was no odor there to speak of in the winter time, when he was there; that you can take an animal, no matter what the condition of the decomposition and freeze it and it has no odor at all, though it takes plenty of ice to do that. ·

Counsel for appellee in their brief say :

" It was during this season of 1898 that appellant ran the vent pipe from its alleged condenser into the smoke stack and malignantly and maliciously, and with total disregard of the rights of other people, scattered the full force of its vile emanations over the country, and continued the use of this vent pipe according to its own admissions during the entire season of the year 1898. We feel warranted in disbelieving the claim that this vent pipe was removed in 1899. We have no doubt that the use of it was continued up to the time of the trial, when Freese, its ex-foreman, was called to the witness stand and exposed the methods which were carried on under the express order and direction of appellant's responsible agent and officer, Alling."

What appears from this evidence and from the statement of counsel for appellee is not that the destruction of the rendering works is required, but that the factory should be conducted with the most improved appliances and the greatest care, in order to prevent the escape of offensive odors. Nor under the evidence offered by appellee and the allegations of its bill does it appear that it is entitled to have the operation of the works, during the winter season, enjoined. Its allegation is that it makes use of the premises owned by it from the middle of May to the 1st of October. Why,

then, from the first of October to the first of May, when its premises are unoccupied and there is no one there to be disturbed by anything done by appellant, should it have the right to have the operation of appellant's factory stopped ?

Appellant is engaged in a necessary occupation, one essential to the health and comfort of the community. Appellee conducts a place of amusement, a public utility, but not a necessity in the sense that is the business carried on by appellant.

In Minke v. Hopeman, 87 Ill. 450, which was the case of a bill filed to enjoin the carrying on of a business similar to that of the defendant, the defendant was perpetually enjoined from carrying on or continuing the business in such a manner as to be offensive to complainant and injurious to him or his family in the use, occupation and enjoyment of his dwelling house and farm. As to this the court say :

" The decree did not seek to deprive the defendant of the right to engage in or prosecute its business, but only from conducting it in such a manner as to be offensive and injurious to others, and in this regard it is right."

The injunction in the present case should have proceeded upon lines similar to that approved in Minke v. Hopeman.

The decree of the Circuit Court will be reversed and the cause remanded, with directions to enter an injunction perpetually restraining appellant, during the months of May, June, July, August and September of each and every year, from disseminating any foul and disagreeable odors that may be carried or wafted over the premises of appellee, and from polluting the waters of the Desplaines river opposite the premises of appellee, and from carrying on or conducting its business in such a manner as to be justly offensive to appellee and injurious to it in the use, occupation and enjoyment of the premises described in said bill, and now owned and occupied by it in the said town of Lyons.

Reversed and remanded, with directions.