JOHN F. WEAVER v. AMELIA KUCHLER AND HENRY KUCHLER.

(Filed September 5, 1906.)

NUISANCE—Per Alia or Per Se—Injunction. Where a slaughter house has been enjoined as a nuisance, and on the hearing of a motion to dissolve the evidence shown that it is not a nuisance per se, and that it can be carried on so as not to constitute a nuisance, the injunction will be modified so as to permit its usage in an unobjectionable manner. Chap. 13, art. 10, Wilson's Statutes, entitled, "An Act to Protect Platted Lands and Townsite Additions from Nuisance," provides:

"Section 134: It shall be unlawful for any person to maintain a slaughter house within less than one-half mile of any tract of land platted into lots and blocks as an addition to any town or city within the Territory of Oklahoma, or to maintain such slaughter house within one-half mile of any tract of land platted into acre tracts for the purposes of being sold for residence and in which tracts of land have actually been sold for residence purposes."

"Section 136: The maintaining of any slaughter house, or location and use of any graveyard or cemetery in violation of the

provisions of this act, are declared to be a nuisance, and any person owning real estate within any such addition to a town or city, or within the lands platted and set apart to be sold for residence purposes, may maintain an action in the courts to abate such nuisance and to enjoin their continuance, and if it appears that they are being carried on in violation of this act, a perpetual injunction shall be granted against the parties maintaining such nuisance."

"Section 137: It shall be the duty of any sheriff, constable or other police officer to make complaint against such nuisance and hasten its abatement as provided for in this act."

Held: That sec. 136 limits the persons authorized to bring an action under the act, to the owners of real estate as described therein, and an action brought by one who is not the owner of real estate as provided under sec. 136, or an officer as provided under sec. 137, must bring himself within the provisions of chap. 56, Wilson's Statutes, entitled, "Nuisance."

(Syllabus by the Court.)

*Error from the District Court of Kay County; before Bayard T. Hainer, Trial Judge.*

*Moss & Turner,* for plaintiff in error.

*C. L. Pinkham* and *W. S. Cline,* for defendants in error.

STATEMENT OF FACTS.

Action by John F. Weaver against Henry Kuchler and Amelia Kuchler to abate a nuisance.

Plaintiff secured a temporary restraining order in the probate court, which upon a motion to dissolve in the district court was modified.

From the order and judgment of modification, plaintiff appeals.

In the fall of 1900 the defendants leased three acres of land on the south half of the southeast quarter of the northeast quarter of section 22, in township 28, north of range 2, east I. M., in Kay county, Oklahoma Territory, and located a slaughter house thereon, and used it continuously for that

purpose until restrained by the temporary writ issued in this action. In the fall of 1905 the defendants purchased 20 acres of land, including the 3 acres above described, for the purpose of having a suitable place to feed and keep their live stock in conjunction with their slaughter house, the location of which was within less than a half a mile from the corporate limits of the city of Newkirk, and of a tract of land platted into lots and blocks as "College Addition" to said city, and within less than a half mile of lands platted to be sold as residence lots and which were actually sold for that purpose.

The plaintiff resided with his family about three-eighths of a mile from the defendant's slaughter house on the southeast quarter of section 27, in township 28, north of range 2, east I. M. a tract contiguous to defendant's 20 acres, and outside the corporate limits of the city of Newkirk and its additions. A creek called "Spring Creek" ran through and across the premises of both parties, the plaintiff's dwelling house being down stream from defendant's slaughter house, and situated about 20 rods back from the creek. Near the dwelling house is a spring from which plaintiff and his family procured their water for family purposes. Plaintiff averred the location of defendant's slaughter house to be within less than a half-mile from the corporate limits of the city of Newkirk, and from a tract of land platted into lots, etc., and special injury to himself, in that the defendants permitted to remain upon the premises in and near the slaughter house and creek the offal, refuse and unsalable portions of the animals slaughtered, a part of which, through the creek, became scattered over and upon his premises, causing the water in the spring to become unwholesome, and unfit for use; and that the decay and decomposition on the premises of both

parties created a foul, unwholesome stench and odor around his dwelling house, endangering the health of plaintiff and his family.

The plaintiff prayed for a judgment permanently enjoining the defendants from using their premises for slaughter house purposes. A temporary restraining order issued out of the probate court on the 25th day of October, 1905, the date of the filing of the petition herein. On the 20th day of November the defendants filed their answer which contained a general denial; also a demurrer to that part of plaintiff's petition alleging the location of defendant's slaughter house to be within less than a half-mile from the corporate limits of the city of Newkirk and its additions. On the 26th day of November the defendants filed a motion to dissolve the temporary writ upon the grounds as set forth in their answer, which was attached to and made a part of their motion. A partial hearing was had on December 1st, and both parties ordered to submit additional evidence in the form of affidavits. On the 30th day of December, 1905, the matter came on for final hearing, and the court rendered judgment modifying the temporary order issued; permitting the defendants to operate their slaughter house, but enjoining them "from permitting any offal, refuse or unsaleable matter of said business thereof in any manner to be conducted into the stream running through the defendant's slaughter house yard; and that said defendants, their agents, of their employees, are hereby enjoined from permitting any offal or refuse matter to accumulate in, about, or near the said slaughter house premises, and the defendants are further enjoined from permitting any bones, carcass, or other objectionable matter resulting from the slaughter of cattle and hogs at said slaughter house to re-

main and decay upon any part of said slaughter house premises."

From the judgment modifying the temporary order plaintiff appeals.

Opinion of the court by

GARBER, J.: It is here contended that the order and judgment of the district court modifying the temporary order of injunction should be set aside and reversed for two reasons: First: That the court committed prejudicial error in not passing on the sufficiency on the part of plaintiff's petition demurred to by the defendants before the motion to dissolve the temporary writ was heard.

The record shows that the attention of the trial court was never called to the demurrer on file; that both parties announced ready for trial without objection, and the court proceeded to hear the evidence on the motion to dissolve. No objection being raised in the court below, the question can not be raised here for the first time. The general answer of the defendants, however, waived their demurrer, and the party to whose pleading a demurrer is filed, can not complain that ruling was not made on the demurrer. *Penn. Co. v. Bond,* 99 Ill. App. 535; 6 Pleading and Practice, 38; Cyc. 259, 274, and authorities cited therein.

The remaining error assigned is, that the court erred in modifying the temporary order of injunction. Plaintiff insists that under sec. 134, art. 10, chap. 13, Wilson's Statutes, entitled: "An Act to Protect Lands Platted into Residence Tracts and Additions to Townsites from Nuisances," that the maintenance of the slaughter house by the defendants was a nuisance *per se.* The sections relied upon, read as follows:

"Section 134: It shall be unlawful for any person to maintain a slaughter house within less than one-half mile of any tract of land platted into lots and blocks as an addition to any town or city within the Territory of Oklahoma, or to maintain such slaughter house within one-half mile of any tract of land platted into acre tracts for the purposes of being sold for residence, and in which tracts of land have actually been sold for residence purposes.

"Section 136: The maintaining of any slaughter house, or location and use of any graveyard, or cemetery, in violation of the provisions of this act, are declared to be a nuisance, and any person owning real estate within any such addition to a town or city, or within the lands platted and set apart to be sold for residence purposes, may maintain an action in the courts to abate such nuisance, and to enjoin their continuance, and if it appears that they are being carried on in violation of this act, a perpetual injunction shall be granted against the parties maintaining such nuisance.

"Section 137: It shall be the duty of any sheriff, constable or other police officer to make complaint against such nuisance and hasten its abatement as provided for in this act."

It will be observed that sections 136 and 137 specify the persons authorized to bring an action under section 134:

"Any person owning real estate within any such addition to a town or city, or within lands platted and set apart to be sold for residence purposes, may maintain an action, and it shall be the duty of any sheriff, constable, or other police officer to make complaint."

Under chapter 13, article 10 of Wilson's Statutes, the legislature declared the maintaining of a slaughter house within a certain district to be a nuisance *per se,* and authorized certain owners of real estate to bring an action in the courts to abate and enjoin its continuance. Whether under

that act, the abatement of defendants' slaughter house (erected long prior to the passage of the act) as a nuisance *per se,* would be constitutional, we do not determine. We think the scope and purpose of the act is clearly set forth in its title, to be "An Act to Protect Platted Lands and Townsite Additions from Nuisances." In the absence of any allegation or proof at the hearing that the plaintiff was an owner of real estate as set forth in section 136, he can not invoke the application of this act. The plaintiff resides outside the city of Newkirk, owns no real estate within its corporate limits, or additions thereto, and it does not appear in the record that this action was brought for the protection of any of the citizens residing within the corporate limits of said city or its additions. On the other hand, it clearly appears from plaintiff's petition that this action is brought under chapter 56 of Wilson's Statutes, entitled "Nuisance," and upon which he must rely in this action. Section one provides:

"A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either: First: Annoys, injures or endangers the comfort, repose, health, or safety of others; or (omitting the 2nd and 3rd sub-divisions) Fourth: In any way renders other persons insecure in life, or in the use of property.

"Section 2: A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individual may be unequal.

"Section 3: Every nuisance not included in the definition of the last section is private.

"Section 8: The remedies against a public nuisance are: First: Indictment: Second: A civil action; or Third: Abatement.

"Section 10 :   A private person may maintain an action for a public nuisance if it is specially injurious to himself but not otherwise."

From the above sections the maintaining of a slaughter house is not a nuisance *per se,* unless it would appear from the evidence, independent of the manner   in which it was being used and conducted that its location, proximity and relationship to the public made it so.

On the hearing on the motion to dissolve the temporary writ, issued in this case, oral testimony, together with the affidavits of numerous witnesses living in the immediate vicinity was submitted, all of which went to the manner in which the defendants used and conducted the slaughter house, and upon this question the testimony was conflicting.   Numerous witnesses testified that its location was some 60 rods from the nearest public highway, in an enclosure of about one acre, and that its usage was not such as, to create a nuisance injurious to the public.   W. M. Smith testified that there is no residence nearer to said slaughter house than the one he occupies as a home for himself and family, and that during the present season he cultivated a piece of land close to the slaughter house and abutting the enclosure, and that the odor he detected therefrom was not different from that coming from an ordinary feed lot where stock was kept.   A. B. Norton, the owner of a quarter section of land (excepting the 20 acres sold the defendants) upon which the slaughter house of the defendants is located, testified substantially that he had resided continuously for more than five years upon that quarter section within less than one-half mile north and east of the slaughter house, and that when he leased the three acre tract to the defendants in the fall of 1900 it was ex-

pressly stipulated that "Whenever the said slaughter house was conducted in such manner as to become a nuisance by causing a stench or odor to be noticeable, then, the lease was to be cancelled, and the house removed," and that during all of that period he was not annoyed in any way by its operation. He further testified that the city of Newkirk practically empties its entire sewerage into the creek or branch called "Spring Creek" running through and across the lands of the plaintiff and defendants, and that frequently the odors arising from said creek caused by the said sewerage, were extremely annoying, and that they existed long prior to the time of the erection of the slaughter house, that various farmers living along the banks of the creek have their feed yards and hog lots on the banks, and that the waters of said creek were more or less polluted by reason thereof, and unfit for stock purposes. Jay Haney, another witness living within one-half mile due north, testified that he had not been annoyed by any odor or disagreeable or injurious effects from the operation of said slaughter house. W. W. Apperson, the stock inspector, who visited the slaughter house two or three times each week in his official capacity to inspect the stock to be slaughtered, testified that he had not observed about the slaughter house or in the yards adjacent thereto, any refuse or offal lying around that would occasion any obnoxious odors. A. L. Hazon, a physician residing at Newkirk, and superintendent of the board of health of Kay county, testified that he had made an examination of the slaughter house in his official capacity, and that he found at that time lying upon the ground a small quantity of refuse matter which he ordered the defendant to remove, that in his opinion the waste from the city of Newkirk found its way into "Spring Creek" as well

as the wash from the various feed lots along the banks of said creek, and that in his opinion the slaughter house in question could be conducted in a comparatively cleanly manner and non-injurious to the public health and unoffensive to the smell, by requiring the owners thereof to promptly dispose of all refuse matter.

In view of the testimony of the above witnesses, can it be seriously urged that there was no evidence reasonably tending to support the finding of the trial judge that the slaughter house of the defendants was not a nuisance *per se?*

Where a nuisance consists not of a building itself, but in a wrongful use of it, the remedy is to stop such wrongful use, and not to remove the building or to enjoin its rightful use. *Barclay v. Com.,* 25 Penn. State 503; *Brightman v. Bristol,* 65 Me. 426; *Welch v. Stowell,* 2 Doug. (Mich.) 332; *Atty. Gen. v. Steward,* 20 N. J. Eq., 415; *Cleveland v. Citizens Gas Light Co.,* 20 N. J. Eq., 201.

In *Holl v. Hall,* 65 Iowa, 529, where it was determined that a certain hog lot was so kept and used so as to create a nuisance, but not that it was a nuisance, *per se,* it was held, that:

"The court was not authorized in wholly restraining the use of the lot for the purpose of feeding hogs. It should have enjoined only such use of the lot as would amount to a nuisance."

Where a livery stable which was a source of annoyance had been burned down, the court refused to enjoin the rebuilding of the same, since it might be so modified as not to be a nuisance. *Shiras v. Olinger,* 50 Iowa, 571.

Although numerous witnesses testified that the usage by the defendants was not such as to create a nuisance, we think

the weight of the evidence established that fact, and the trial court very properly interrogated the defendant to ascertain his ability and willingness to conduct his business in such a manner as to avoid the matters complained of by the plaintiff as being specially injurious to him. The evidence upon this phase of the question was not contradictory, but very satisfactory, and clearly showed that the defendant would and could make certain changes whereby the matters complained of could be easily avoided, and under those circumstances, the court would not have been warranted in rendering a judgment wholly restraining the defendants from the use of their slaughter house, but only from such usage as created a nuisance injurious to the plaintiff, and to the public.

"A court of equity is always reluctant to grant a perpetual injunction against the carrying on of a legitimate business. Where the court finds that such an establishment, as conducted, is a nuisance, it should allow the defendants to show, if they can, that by the use of proper methods and appliances it is possible to continue the business in the same place without its being a nuisance. Where this can be done, a decree absolutely enjoining the defendant from further conducting such business is too broad. The injunction should be limited to such usage as created the nuisance, leaving the right to carry on the business in the proper manner." 18 Encl. Pl. & Pr. 1148; *Hutchins v. Smith,* 63 Barb. (N. Y.) 251; *Chamberlain v. Douglas,* 24 N. Y. App. Div. 582; *Bushnell v. Robeson,* 62 Iowa 540; *Seifried v. Hayes,* 81 Ky. 377; *Fresno v. Fresno Canal, etc., Co.* 98 Cal. 179.

"When the defendant who has been doing what amounts to a nuisance disclaims the intention to continue it and is proceeding with diligence to remove and abate it, the court will, if satisfied that the cause of complaint will be removed as speedily as practicable, refuse an injunction." *King v. Morris R. Co.,* 18 N J. Eq. 397.

In view of the evidence in this case, the trial court properly modified the temporary restraining order, permitting the defendants to conduct and operate their slaughter house, but restraining them from such usage as to create it a nuisance to the plaintiff and the public; and the judgment of the trial court will therefore be affirmed.

Hainer, J., who presided in the court below, not sitting; all the other Justices concurring.