(April 15, 1911.)

## D. G. LORENZI, Respondent, v. STAR MARKET COMPANY, Appellant.

### [115 Pac. 490.]

FINDINGS ON SEPARATE DEFENSE—PARTY-WALL AGREEMENT—MAINTE-NANCE OF PARTY-WALL — NUISANCE — INJUNCTION — CONDUCTING BUSINESS IN OFFENSIVE MANNER.

(Syllabus by the court.)

1.   Where a defendant files a separate answer, setting up affirmative matter constituting a defense, it is error for the trial court to fail to make findings on the issues thus raised, where a finding favorable to the defendant on the issue presented would defeat the plaintiff's right of recovery.

2.   Where one purchases property that is connected with and supported by a party-wall, and such wall is constructed and maintained on the land of the adjoining owner, and the purchaser continues to use such party-wall as it had been used by his grantor, he is chargeable with notice of the terms and conditions of the agreement under which the wall was constructed and his grantor used the same.

3.   The smoking of meats, rendering lard and manufacturing of sausages and other meat products is not, *per se,* a nuisance, and where the city authorities have not prescribed any limits within which such business shall be carried on, or prohibited the carrying on of such business within any part or portion of the city, it is not, *per se,* a nuisance to carry on such business at any place within the city, and it only becomes a nuisance to do so by reason

of the particular facts of any specific case and the manner and method of conducting the business at such place.

4. Where the facts of any given case show that a lawful business is being conducted in such a manner and under such circumstances as to become a private nuisance to an adjoining property owner, and an injury and damage to such property owner, and it is determined by the court that an injunction ought to be issued, such injunction should not be absolute, but ought, rather, to be a qualified injunction, unless it clearly appears that the business could not be conducted in any manner or under any circumstances at the specific place without being a nuisance to such adjoining property owner.

APPEAL from the District Court of the Eighth Judicial District, for the County of Bonner. Hon. Robert N. Dunn, Judge.

Action for perpetual injunction.  Judgment for plaintiff and defendant appealed. *Reversed.*

E. W. Wheelan, for Appellant.

"Where a use of a property is found to be a nuisance, it is proper to allow the defendant a reasonable time to rearrange and remodel his appliances so they will not further operate as a nuisance, or to remove his plant before an injunction against the business or use is allowed to take effect." (29 Cyc. 1250.)

"Where the business or use of property alleged to be a nuisance is lawful and can be carried on without causing the injuries complained of, defendant should not be restrained from carrying it on at all, but the injunction should go merely against carrying it on so as to prove injurious or offensive." (29 Cyc. 1248; *McMenomy v. Baud,* 87 Cal. 134, 26 Pac. 795.)

Irreparable injury lies at the foundation of relief in equity, which must be so great as to be incapable of compensation in damages. (Hilliard, Injunctions, 269, 270.) Equity will not relieve if the injury be doubtful, eventual or contingent. (*Butler v. Rogers,* 1 Stock. (N. J. Eq.) 487; *Green v. Lake,* 54 Miss. 540, 28 Am. Rep. 378.)

The injunction should be limited to such usage as created the nuisance, leaving the right to carry on the business in the proper manner. (*Weaver v. Kuchler,* 17 Okl. 189, 87 Pac. 600, and cases cited; *Wilcox v. Henry,* 35 Wash. 591, 77 Pac. 1055.)

G. H. Martin, for Respondent.

The decree of the court does not prevent the appellant from carrying on the manufacture of such meat products as do not generate smoke and foul and offensive odors, but it does interdict and prohibit such manufacturing processes as give rise to smoke and foul and offensive odors. It does not prevent the appellant from conducting its ordinary retail meat business on its premises, nor does it prohibit the appellant from doing any act in connection therewith which does not constitute a nuisance.

The fact that a person knows that a structure is being built and the purpose for which it is to be used, and makes no objection thereto, does not estop him afterward to sue to abate it as a nuisance, because of injuries arising from its use, unless he encouraged the building of the structure and the use complained of. (29 Cyc. 1231; *Harley v. Merrill Brick Co.,* 83 Iowa, 73, 48 N. W. 1000; *Huntington v. Phoenix,* 40 W. Va. 711, 21 S. E. 1037; *Chapman v. Rochester,* 110 N. Y. 273, 6 Am. St. 366, 18 N. E. 88, 1 L. R. A. 296; *Leonard v. Spencer,* 108 N. Y. 338, 15 N. E. 397.)

The party-wall agreement was not recorded and Lorenzi had no notice or knowledge at the time he bought the Lorenzi building from Hunt that there was to be a rendering establishment and one for the cooking and smoking of meats maintained in the Star Market building, and he had nothing to do with the construction of the Lorenzi building and did not know how the joists of said building were put into the wall.

He is not liable for any act of commission or omission on the part of his grantor. (*Learned v. Castle,* 78 Cal. 454, 18 Pac. 872, 21 Pac. 11; *O'Brien v. St. Paul,* 18 Minn. 176; *Alexander v. Kerr,* 2 Rawle (Pa.), 83, 19 Am. Dec. 616.)

Where the facts found sustain the judgment, it is immaterial that there were no findings upon some of the issues presented. (*Malone v. Del Norte County,* 77 Cal. 217, 19 Pac. 422; *Dyer v. Brogan,* 70 Cal. 136, 11 Pac. 589; *Robarts v. Haley,* 65 Cal. 397, 4 Pac. 385; *McCourtney v. Fortune,* 57 Cal. 617; *Porter v. Woodward,* 57 Cal. 535.)

AILSHIE, Presiding J.—This is an appeal from a judgment and an order denying a motion for a new trial.

The action was instituted by the plaintiff to secure a perpetual injunction restraining defendant from the maintenance of a nuisance. The alleged nuisance consists in the escape of smoke and foul and offensive odors from the defendant's building, wherein it conducts a meat market and smoking and rendering establishment for smoking meats and rendering lard and making sausages, etc. The court, after hearing the proofs, granted a perpetual injunction against the defendant carrying on the business of smoking and curing meats and rendering lard in its building adjoining the plaintiff's premises.

The appellant owns a two-story brick building situated on the principal business street of the city of Sandpoint. The lower story was used as a meat market and for other purposes in connection therewith and incidental thereto. For convenience we shall refer hereafter to this building as the Star Market building. The respondent owns a two-story brick building adjoining the appellant's building on the north. We shall hereafter refer to respondent's building for convenience as the Lorenzi building. The Star Market building was not erected by the appellant, but was constructed by its grantor. The Lorenzi building was likewise erected by respondent's grantor.

The defendant and appellant filed a separate answer in which it set out certain facts charging the plaintiff with contributory negligence which it claimed was sufficient to defeat his right of recovery. Evidence was introduced on this question, but the trial court made no findings of fact touching

this alleged defense. The appellant now complains of the
action of the trial court in failing to find on this issue. This
separate defense had reference to a party-wall agreement and
the action of the respective parties and their grantors under
such agreement. It appears that prior to the erection of
either building the proprietors of the respective lots entered
into an agreement whereby the appellant's grantors, W. G.
Hunt, and Mary N. Hunt, agreed to erect on the north line of
their lot a party-wall for a two-story building, and that the
wall should be placed on their ground and that they should
own the fee therein; and that the respondent's grantors, W.
F. Allbaugh, Addie E. Allbaugh, Henry Frey and Medora
Frey, the owners of the adjoining lot, their successors and
assigns, should have the right to use the party-wall so erected,
and to connect their building therewith and should have the
right "to cut any necessary joist holes and chimney flues
that may be deemed necessary in the construction and use
of their said store building, and at all times hereafter have
the full liberty, right and privilege of joining to said party-
wall above and below the surface of the ground, and along
the whole or any part of the length of said wall, any build-
ings which they, or their legal representatives, or assigns may
see fit or have occasion to erect. . . . ."

Soon after the erection of the Star Market building re-
spondent's grantors erected the Lorenzi building, the first
story of which respondent uses for the manufacture and sale
of candies and confectionery and the second story for offices.
It is alleged by the separate answer that respondent's grantors
in the erection of the Lorenzi building "negligently and care-
lessly placed the joists of the said building directly opposite
the joists entering said wall" from the Star Market building,
"and in placing the joists in said wall the openings chiseled
in said wall to place the joists therein were not closed after
placing the joists therein, but large openings were left in
said wall around the joists."

It is further alleged that "any inconvenience or annoyance
caused to the plaintiff in this action by smoke or odors pro-
duced by defendant on defendant's premises were caused or

are caused by reason of the faulty construction of the plaintiff's building where the building of the plaintiff is connected with the building of the defendant, etc.''

It is further alleged that plaintiff's grantors knew at the time of the erection of the Lorenzi building of the use to which the Star Market building was to be applied, and that they were chargeable with notice that the occupants of the Star Market building would smoke and cure meats and manufacture sausages and render lard in this building.

A demurrer to this separate answer was filed, but does not appear to have ever been passed on by the trial court. The trial was had, apparently, on the theory that the demurrer had been, or would be, overruled. At least, the case was tried on the theory that this separate answer was in the case and formed an issue. It is claimed that this party-wall agreement was not a matter of record, and that respondent was accordingly not chargeable with notice of its terms and conditions. So long, however, as the respondent, who was the grantee and successor in interest of the party who entered into the party-wall agreement, used this party-wall and claimed the benefits and advantages of the party-wall agreement, he would be chargeable with notice of the terms of the agreement, whether it was or was not a matter of record. He was chargeable with actual notice that the party-wall was not on his ground, but was on the ground belonging to appellant. So long as he took advantage of the terms of that agreement and used the party-wall, he was put on notice of the terms of the agreement. In other words, he was chargeable with notice that such an agreement must necessarily exist, and this information would put him on inquiry as to the terms and conditions of that agreement.

It is further contended, however, that since the respondent did not erect the Lorenzi building, he could not be chargeable with contributory negligence for the action of his grantors in cutting joist holes through the wall which resulted in letting the offensive smoke and odors escape from the Star Market building into his building. He purchased the building, and so long as he availed himself of the benefits of the

party-wall agreement, he must be charged with notice of its terms. He would likewise be liable for the manner in which he maintains his side of the party-wall and attaches his building thereto. If his grantor cut holes through the wall through which offensive odors and gases escaped from the smoking and rendering works of the appellant, he would be chargeable with negligence in allowing those openings to remain in the wall and could not maintain an action against the appellant if it should be satisfactorily shown that the closing of those openings would avoid and remedy the difficulty and save respondent from the offense and annoyance of which he complains. On this question the evidence is conflicting; it is conflicting on the question as to whether the openings were entirely through the wall, or only four inches in the wall; it is also conflicting on the point as to whether the smoke and odors and gases escaped solely through or by reason of these openings or on account of other defects, or whether they would penetrate the wall even if there were no openings at all.

The trial court should have made findings on the issue thus presented by the separate answer. It will not be necessary to order a new trial for this purpose. The case will be remanded with directions to the trial court to make findings on the issues thus presented.

If the court should find against the appellant on the issues raised by the separate answer, the case would be in the same condition, perhaps, as we now find it. The trial court would very likely enter the same kind of a judgment. It is therefore necessary that we consider the other question presented, namely the extent of the judgment and perpetual restraining order entered in this case. The appellant insists that even though it be admitted that the court was correct in finding against it, still it was erroneous to enter judgment perpetually restraining it and its officers and agents and employees ''from rendering lard and smoking ham, bacon and other meat products and from manufacturing any other meat products generating smoke or foul or offensive odors upon its premises adjoining the plaintiff's premises, . . . . etc.'' It is con-

tended that the appellant's business is not, *per se*, a nuisance, and that it was entirely erroneous for the trial court to perpetually enjoin and restrain it from carrying on its business, but that the order should have simply restrained and enjoined it from so conducting its business as to be offensive or annoying to the respondent, or to continue to annoy or injure or damage the respondent by permitting the escape of smoke, offensive odors and gases from its place of business.

This business was carried on in an incorporated city in this state. The statute, subd. 17, sec. 2238, Rev. Codes, confers the power on the city authorities to pass ordinances regulating the carrying on of such business as the appellant is engaged in, and authorizes the municipal authorities to prescribe limits within which such business as smoking meat or rendering lard, manufacturing sausages, etc., may be conducted. It follows that such a business is not unlawful or a nuisance, *per se*, at any place within the municipality, until such time as it is prohibited by the municipal authorities from being conducted within any prescribed territory. Meat markets are a necessity, and it is a matter of convenience to the consumer as well as the owner of the market that it be within convenient reach of the consumer. It is not necessary, however, that meat should be smoked and lard rendered within the business or residence portion of the city or at any particular place. The city authorities might entirely prohibit such things being carried on within certain territory. It might be so conducted, however, that it would be unobjectionable and inoffensive at almost any place; or it may be so conducted, on the other hand, as to be a nuisance within any reasonable distance of an office or residence. There is, however, danger in the unqualified exercise of the powers of the court of equity in absolutely prohibiting a party carrying on a lawful business on his own premises. Where a business is not *per se* a nuisance or unlawful, it is always safer for the court to make its injunction only broad enough to prohibit a continuance of the business in such a manner or under such conditions or circumstances as to annoy or be offensive to the party aggrieved, and thus leave the matter in such condition that the

party offending may, if it is possible or becomes possible, remedy the defect and take such precaution as to enable him to conduct his business in such a manner as not to be injurious to his neighbor.

In *Green v. Lake,* 54 Miss. 540, 28 Am. Rep. 378, the supreme court of Mississippi was dealing with a case where complainant charged his adversary with creating a noise by running machinery, and by allowing refuse to collect and breed disease. The business itself seems to have been a lawful business, but the charge was made against the method of conducting the business. The court in the course of the consideration of the question said:

"A chancellor ought to be well satisfied that the grievance is serious and well founded, and that there is no remedy short of the cessation of such use before he will abate it as a nuisance by injunction. The case must be urgent for him to do so before the complainant has established the existence of the nuisance at law. If the grievance can be removed by the aid of science and skill, a court of equity will go no further than to require those things to be done. The legislature and the local municipal authorities have ample power to regulate the business of the city so as to produce as little inconvenience and annoyance to the different classes of its population as possible. Noisome and offensive trades may be assigned certain limits.

"It does not appear that the authorities of Aberdeen have ever declared that Lake's mill was improperly located or that such establishments should not be carried on in the neighborhood where his is located. The merchant, mechanic, manufacturer, butcher, laborer, and professional man, as well as those of wealth and leisure, constitute the city. They all have rights, and they ought to be so accommodated that each may enjoy his property and pursue his calling under the regulations prescribed by the authorities, without inflicting unnecessary and reasonably avoidable injury on others or their property."

In *McMenomy v. Baud,* 87 Cal. 134, 26 Pac. 795, the supreme court of California was considering the question as

to whether a party maintaining and operating a brass foundry and machinery incident thereto in the city of San Francisco was maintaining a nuisance, and should be enjoined and restrained outright, or merely conditionally, from continuing the business. The court held that a brass foundry, and machinery incident thereto, are not, *prima facie,* a nuisance. Among other things, the court said:

"Therefore, where the injurious effects complained of may be prevented without abating or enjoining the works or the operation thereof entirely, only the causes of the specific injurious effects proved should be enjoined. If, for example, the cause be the production and escape of smoke and soot in such a way as that they penetrate plaintiff's premises to his injury, the remedy by injunction should be restricted to this specific injury, and leave the defendant at liberty to operate his works, if he can, and elects to do so, in such a manner as to remove the cause and prevent the injury."

In *Weaver v. Kuchler,* 17 Okl. 189, 87 Pac. 600, the supreme court of Oklahoma was considering the question of abating a slaughter-house as a nuisance, and after discussing the nature of the business and announcing the law that such a business is not, *per se,* a nuisance, but that it becomes a nuisance purely by reason of the place where it is located, and the manner in which it is conducted, quoted with approval from 18 Ency. of Pl. & Pr., p. 1148, as follows:

"A court of equity is always reluctant to grant a perpetual injunction against the carrying on of a legitimate business. Where the court finds that such an establishment, as conducted, is a nuisance, it should allow the defendants to show, if they can, that, by the use of proper methods and appliances, it is possible to continue the business in the same place without its being a nuisance. Where this can be done, a decree absolutely enjoining the defendants from further conducting such business is too broad. The injunction should be limited to such usage as created the nuisance, leaving the right to carry on the business in the proper manner."

It seems to us that these authorities correctly state the rule as the same should be applied in cases where it is sought to

absolutely restrain and prohibit a business which is within itself and *per se* lawful.

If, after making findings of fact on the issues raised by the separate defense, as heretofore suggested, the court concludes that an injunction should be granted in this case, the injunction ought to be *qualified,* rather than *absolute.* In other words, the judgment and order of the court, under the facts of this case, ought not to absolutely restrain and prohibit the appellant from ever smoking and curing meat on this property, or from ever rendering lard or cooking meat in this building; but it ought rather to restrain and prohibit the appellant from so doing any of the above-enumerated acts, or so conducting its business, as to permit the offensive and noxious smokes, gases and odors to escape into respondent's building and render the same untenantable, or to work irreparable injury to respondent's property. Such a judgment will enable the appellant, if possible, to so alter and change its building and so improve its processes, that it may be able to carry on all of its business, or such part of it as will not injure or damage the respondent's property.

It has been suggested in the argument that the appellant ought to be perpetually enjoined and restrained from carrying on any of the objectionable business, and thereby end the controversy, and save any possible future expense of litigation over the same business. We may answer that suggestion by saying that if an injunction should be entered as we have indicated, the appellant would be liable for contempt any time it might violate such an injunction, and would likewise be liable for the costs and expense of any proceeding necessary to carry out the terms of the injunction, and it would be acting at its own peril. It should be remembered that this property belongs to appellant, and that it has a right to use it in any lawful manner in which it sees fit to employ its property, so long as it does not injure or damage anyone else. The rights of the property owner must no more be overlooked on the one side than on the other.

For the foregoing reasons, the judgment will be *reversed,* and the cause remanded to the district court, with instruc-

tions to make findings of fact on the issues raised by the separate defense pleaded, and to enter judgment in accordance therewith, and in harmony with the views herein expressed. Costs of this appeal will be divided equally between the parties.

Sullivan, J., concurs.