BARTH v. CHRISTIAN PSYCHOPATHIC HOSPITAL ASS'N.

1. NUISANCE—EQUITY—INJUNCTION.
  Where people establish their homes in the neighborhood of an asylum which is already in existence and constitutes a nuisance, they cannot appeal to a court of equity to require the abandonment of the institution.

2. SAME.

An injunction lies to restrain the intended establishment of an insane asylum in a residential section of a city as an intended nuisance, where the establishment of such asylum would be destructive of the comfort, well-being and property rights of the residents in such section.[1] OSTRANDER, J., dissenting.

Appeal from Kent; McDonald, J. Submitted June 12, 1916. (Docket No. 25.) Decided June 1, 1917.

Bill by George W. Barth and others against the Christian Psychopathic Hospital Association to restrain the erection of a hospital adjacent to plaintiffs' residences. From a decree dismissing the bill, plaintiffs appeal. Reversed, and decree entered for plaintiffs.

*Horace T. Barnaby* and *Ganson Taggart*, for plaintiffs.

*Leonard D. Verdier*, for defendant.

KUHN, C. J. The amended bill seeks to enjoin the defendant from erecting and maintaining a private insane asylum upon property described in the bill and which immediately adjoins the city of Grand Rapids and the property of the several plaintiffs herein. The bill alleges that the defendant is organized under the laws of this State for the care of imbeciles and insane persons, and for some time past has been, and is now, conducting such an institution on a 40-acre farm in the township of Gaines, Kent county. At the time of filing the bill it had recently contracted to purchase a tract of 18 acres of land here in question and intended to erect and maintain thereon an asylum for the care, custody, and treatment of some 250 imbeciles and insane patients. It was made to appear that

[1] For authorities discussing the question as to whether insane asylum or hospital for the insane is a nuisance, see note in 40 L. R. A. (N. S.) 647.

the plaintiffs are the owners and occupiers of the property adjoining and in the immediate vicinity of the location of the proposed insane asylum; that they purchased their lots for residence purposes, and now occupy their homes, and that the neighborhood· is a residential district which has no other present value than for such purposes. It is· alleged that the property of the plaintiffs would.be depreciated by the establishment and maintenance of such a hospital as the defendant intends to maintain to the amount of at least 50 per cent. of the present value of the property.

It is further claimed and alleged that the establishment of such an institution would make living in the vicinity uncomfortable, unpleasant, and unsafe, as the residents would be in constant fear and danger of violence from escaping inmates, and that they would be in constant danger and fear of infection from disease, and annoyed and inconvenienced by the sight of such an institution. Testimony was offered to prove the facts alleged, but the court, being of the opinion that, even if these facts were proven, it would not change the legal situation, refused to hear any proofs, and denied the injunction and dismissed the bill. ·

It seems to be conceded that the single question here involved is whether the establishment and maintenance of an insane asylum in the location in question would constitute a nuisance as to the several parties plaintiff and other residents of the immediate vicinity. Counsel concede in their brief that such an institution as an asylum or hospital is not a nuisance *per se*, but it is contended by the counsel for plaintiffs that it may be a nuisance by reason of its location. The following quotation from 29 Cyc. p. 1175, states the rule contended for:

"A hospital is not a nuisance *per se*, or even *prima facie*, but it may *be so located* and conducted as to be a nuisance to people living close to it."

It is argued that it may not be a nuisance located in Gaines township where it is now located, but by being brought in a residential district in close proximity to the homes of the plaintiffs it would become and be a nuisance. Mr. Joyce, in his work on Nuisances (page 52), makes the following comment:

"To live comfortably is the chief and most reasonable object in the acquirement of property by men, so that any material interference with one's neighbor in the comfortable enjoyment of life is a wrong which should be redressed."

It is said that the allegations of the bill of complaint are merely speculative, imaginary, or apprehensive of a threatened evil, and that no relief should be granted, and that the equity court should not restrain the erection of a structure because it may in its operation become a nuisance, relying upon *Siegel* v. *Wayne Circuit Judge,* 155 Mich. 459 (119 N. W. 645). The suit at bar, however, is not to enjoin the erection of a building, but the relief sought is to enjoin the defendant from maintaining an insane asylum, which is the avowed purpose of defendant. In our opinion, a clear statement of the rule which should govern cases of this kind is stated by Mr. Justice HOOKER in *McMorran* v. *Fitzgerald,* 106 Mich. 649 (64 N. W. 569, 58 Am. St. Rep. 511):

"Injunctions restraining the use of property in accordance with the owner's interests should be cautiously granted. As a rule, the owner may make such use of his premises as his business or taste may dictate, and the only limitation upon his right is that he must so use his property as not to cause injury to the property or rights of those owning property in the vicinity. There should not be a technical or fanciful interpretation of this rule. It must always be applied in the light of the circumstances; and uses of property which might be improper in one locality may be proper in another. Thus a slaughterhouse might be protected in a place remote from residences or places of business,

though the land of an adjoining proprietor should not be free from noxious odors arising therefrom. But in a populous district, or in case that the adjoining proprietor should choose to erect a residence upon his premises, the slaughterhouse would be or might become a nuisance. Smoke and noise which are common in cities would be intolerable in rural or suburban districts, and, as such, might be excluded by the law. As long as the smoke and tumult are confined to portions of a city which are principally devoted to such business, little difficulty arises, and, though theoretically a resident of such locality may have the same rights to immunity from discomfort, usually his personal interest in the increase of values which results from occupation for business purposes satisfies him. But when one invades a suburban district with an offensive and noisy business, which from its nature is injurious to those having homes in the vicinity, merely because he can purchase land cheap, or because the location has peculiar advantages for his purpose, he takes the risk of being compelled to compensate the injured neighbors, or perhaps desist from the offensive use of the property."

This is not of that class of cases where the plaintiffs have come to the nuisance, as where they have established their homes in the vicinity of an asylum already established. Asylums are generally located, and properly so, in a locality removed from residences, and if people thereafter seek the vicinity for residential purposes, they do so with a full knowledge of the nuisance already established. They can take advantage of the depreciated value of the property and thus buy home property at less prices than they could elsewhere, and are thus financially compensated for the nuisance which they are thus called upon to endure. Having sought the location with a full knowledge of its existence and having gained the financial advantage of having been able to purchase at a less price, they would be in no position to appeal to the conscience of a court of equity to demand that the institution, located there

before their arrival, be abandoned. This distinction is recognized in 29 Cyc. p. 1163:

"There is a very marked distinction to be observed in reason and equity between the case of a business long established in a particular locality which has become a nuisance from the location of buildings near it and that of a new erection or business threatened in such vicinity; and it requires a much clearer case to justify the enjoining of a business well established than to prevent the establishment of a business by one who comes in to establish it for the first time and is met at the threshold of his enterprise by the remonstrance of the inhabitants."

In the case before us the defendant is met "at the threshold of his enterprise by the remonstrance of the inhabitants." See, also, *Whittemore* v. *Laundry Co.,* 181 Mich. 564 (148 N. W. 437, 52 L. R. A. [N. S.] 930, Am. & Eng. Ann. Cas. 1916C, 818).

In our opinion it would be folly to say that they would not be entitled to any relief until the asylum has been established. It must be conceded that the establishment of such an institution in close proximity to the residences of the plaintiffs, which are in a residential section of the city, would destroy the comfort, the well-being, and the property rights of the plaintiffs. We think that the plaintiffs have made out, upon the admitted facts, a case of intended nuisance, and that the defendant should be enjoined as prayed for in the amended bill from erecting and maintaining an asylum at the location in question.

The order of the lower court will be reversed, and a decree here entered in accordance with this opinion, with costs to the plaintiffs.

STONE, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred with KUHN, C. J.

OSTRANDER, J. I favor the affirmance of the decree.

PERSON, J., took no part in the decision.