SAIER *v.* JOY.

1. NUISANCE—UNDERTAKING ESTABLISHMENT—INJUNCTION.
    The maintenance of an undertaking establishment and morgue in a residential section of a city, although not a nuisance *per se*, may be enjoined by nearby apartment owners where it will cause depression to the normal person, lower his vitality, render him more susceptible to disease, and deprive his home of the comfort, repose and enjoyment to which he is entitled, and he will sustain substantial financial loss, because of the depreciation in value of his property, and there is a strong probability that he will be disturbed by noxious odors due to the use of formaldehyde in the summer months when the windows are open.[1]

2. SAME.
    The writ of injunction is not one of right, but of grace. It should not issue out of hand, but should issue in cases where the right to such relief is clearly established.

Appeal from Ingham; Collingwood, J. Submitted June 27, 1917. (Docket No. 62.) Decided September 27, 1917.

Bill by William Saier and others against William H. Joy and another to enjoin the maintenance of an undertaking establishment in a residential neighborhood. From a decree dismissing the bill, plaintiffs appeal. Reversed, and decree entered for plaintiffs.

*L. B. Gardner* and *O. J. Hood,* for plaintiffs.

*Cummins & Nichols* (*William M. Smith,* of counsel), for defendants.

FELLOWS, J. Townsend street, in the city of Lan-

---

[1] On the question as to whether an undertaking establishment may be considered a nuisance, see note in 31 L. R. A. (N. S.) 608.

sing, is one of the principal residence streets of the city, and extends south from the Capitol grounds to Main street, a distance of about half a mile. In the second block south from the Capitol grounds, and on the west side of the street, is located the apartment house owned by plaintiffs William and Jessie E. Saier. It is worth approximately $30,000, consists of six apartments, one of which is occupied by Mr. and Mrs. Saier for their home; the balance being occupied by tenants. Adjoining this property on the north is the property of the defendants, known in the record as the Lantz property. Immediately north of the Lantz property is the property and home of plaintiff Flora Johnson. All the houses on these three pieces of property front on Townsend street. In the rear of the Johnson property, and fronting on Washtenaw street, is the property of plaintiff Emma Quarmby, which extends to the Lantz property in the rear. Due to its nearness to the capitol, the property of all the plaintiffs is valuable for use by tenants and roomers. Prior to the purchase of the Lantz property by the defendants, it was used solely for residential purposes; the house being a two-story brick in front, with frame part in the rear. The defendants are undertakers, and prior to their purchase of the Lantz property conducted their business in the business part of the city. They purchased the Lantz property for the purpose of there establishing their business, including the maintenance and conduct of a morgue. On learning this fact plaintiff Saier and others protested. The protest being unheeded, this bill was filed for injunctive relief. Upon the hearing a large number of witnesses, both expert and lay, were sworn and at its conclusion the bill was dismissed.

It is the claim of the plaintiffs, stated without unnecessary detail, that the value and desirability of their property will be materially decreased by the

maintenance of defendants' business at the Lantz property; that there will be great danger from infectious and communicable disease from the bodies of persons dying therefrom taken to defendants' morgue; that disagreeable and noxious odors will permeate the neighborhood; that bodies will be taken there for autopsies and embalming; that bodies of persons meeting accidental death, and the unknown dead, will be taken there and left for some time pending identification; that funerals will be there conducted, and that there will be a frequent coming and going of hearses and dead bodies; that it will create such a constant reminder of death as to depress plaintiffs, their tenants and roomers, rendering them less able to resist disease, and, under the circumstances, rendering the conduct of the business in that location a private nuisance, which should be abated by a court of equity at the suit of an interested property owner.

On the part of the defendants it is insisted that they have for a great many·years engaged in their business; that they are licensed embalmers, and always have conducted, and will in the future conduct, their business in accordance with the rules of the State board of health, in a sanitary manner; that bodies of persons dying from communicable disease, other than tuberculosis and typhoid fever, will not be taken to their establishment; that there is no danger to the health of adjacent occupants from these diseases, or from the handling of any other bodies that may be brought there; that no noxious or disagreeable odors will escape the premises; that they purpose to tear down the frame part of the building and erect a brick part for their morgue and business on strictly sanitary lines; that the part of the house fronting on the street will have the appearance of a residence, that the funerals will be infrequent, and that the conduct of their business will in no way de-

press the normal person; that the maintenance of a morgue and their business is not a nuisance *per se;* that it is not, under the circumstances of the case, a nuisance; that both the injury and the damages claimed are purely speculative; and that in a large number of the cities of the State funeral establishments and morgues are located in residential districts.

We are satisfied from the evidence in the case that the value of the plaintiffs' property would be materially decreased by the maintenance of defendants' business at the Lantz property. Many witnesses were called by the plaintiffs on this subject, and the testimony in opposition is very meager. We are convinced that such depreciation in value would be substantial, ranging from one-quarter to one-third of the value. This damage would be actual, and not visionary or speculative.

We do not find the claim of plaintiffs that there is danger of disease being communicated from dead bodies in the morgue · to those living in adjoining houses is sustained. The defendants have been in the undertaking business for many years. There is in the entire record no intimation but that they have always conducted their business in a healthful and sanitary manner, in accordance with the rules of the State board of health, and the record satisfies us that, when so conducted, the danger, if not entirely removed, is infinitesimal. The proofs show and are uncontradicted that no bodies of persons dying from communicable disease, other than tuberculosis and typhoid fever, would be taken to the morgue. Some stress is laid on the tuberculosis cases. But we are satisfied from the record, that, notwithstanding the lay opinion of this dread disease, there is no danger of its communication from a dead body to persons in adjoining houses, where proper precautions are taken in accordance with the regular method of embalming.

Physicians seem to agree that not only have decidedly advanced steps been taken in its treatment, but also in prevention of its spread.

We are not so well satisfied that noxious odors will not escape defendants' premises. Formaldehyde is extensively used by them in embalming, deodorizing, and sanitation. The more thorough and complete the sanitation, the more formaldehyde is used. It gives off a pungent odor, and it is quite doubtful to our minds that this odor would fail to reach adjacent houses, situated as close as these houses, especially in the summer time, when the plaintiffs would expect to have, and have a right to have, their windows open. The Saier apartments are within 13½ feet of the house on the Lantz property, and there are 25 windows on the north side. The Johnson and Quarmby houses are very close to the line, and have numerous windows facing the Lantz house.

The defendants have failed to convince us that undertaking establishments with morgues are located in other cities in the strictly residential districts. While testimony tending to support such claim appears in the record, the testimony in rebuttal is persuasive that such establishments either border on, and are close to, business sections, or are in locations where the residential character of the district is giving away and business is breaking in.

The argument revolved quite largely around the question of whether the maintenance of an undertaking establishment and morgue in close proximity to a home would so affect the normal mind as to render its maintenance in a strictly residential district, such as this district is, a private nuisance, and as such abatable by a court of equity. Much testimony, both professional and lay, upon this subject was taken. Whether this may be the subject of opinion evidence is a mooted question. We think it requires no deep

research in psychology to reach the conclusion that a constant reminder of death has a depressing influence upon the normal person. Cheerful surroundings are conducive to recovery for one suffering from disease, and cheerful surroundings are conducive to the maintenance of vigorous health in the normal person. Mental depression, horror, and dread lower the vitality, rendering one more susceptible to disease, and reduce the power of resistance. There is an abundance of testimony in this record confirmatory of this, and it is a matter of common knowledge. The constant going and coming of the hearse (defendants in 11 months had 269 funerals) ; the not infrequent taking in and out of dead bodies; the occasional funeral with its mourners and funeral airs, held in the part of the house designed for a chapel; the unknown dead in the morgue, and the visits of relatives seeking to identify them; the thought of autopsies, of embalming; the dread, or horror, or thought, that the dead are or may be lying in the house next door, a morgue; the dread of communicable disease, not well founded, as we have seen, but nevertheless present in the mind of the normal layman—all of these are conducive to depression of the normal person; each of these is a constant reminder of mortality. These constant reminders, this depression of mind, deprive the home of that comfort and repose to which its owner is entitled.

We cannot overlook the right to engage in a lawful trade, nor the fact that the conduct of the undertaking business is not only lawful, but highly necessary, nor that it is not a nuisance *per se*. Nor can we overlook the right of the citizen to be protected in his home, and his right to the enjoyment there of that repose and comfort that are inherently his. The question here is not the restraining of defendants' business, but the restraint of its intrusion into a long-established and strictly residential district. The cases

directly in point are meager.  The industry of counsel, and such investigation as we have been able to make, disclose but two:  *Westcott* v. *Middleton*, 43 N. J. Eq. 478 (11 Atl. 490) ; *Densmore* v. *Evergreen Camp, No. 147*, 61 Wash. 230 (112 Pac. 255, 31 L. R. A. [N. S.] 608, Am. & Eng. Ann. Cas. 1912B, 1206).

In the New Jersey case the injunction was refused, and the bill dismissed.  We are not impressed that the opinion in that case makes clear that the locality involved was exclusively residential in character.  From the opinion it does appear that a portion of complainant's house was occupied for business purposes, and defendant had been conducting his business for 11 years in its then present location, which is spoken of as a "populous part" of the city, and the case seems to turn quite largely on the question of whether the business of an undertaker is a nuisance *per se*.  The complainant in that case appeared to have been of a supersensitive temperament, while the rights of the parties should be measured by that which affects the normal person—not the supersensitive, on the one hand, or the hardened, inured, on the other.

In the Washington case the injunctive relief was granted, not upon the ground that the undertaking business is a nuisance *per se,* but that by reason of its location it might be or become one, and the right to injunctive relief to restrain the conduct of a business, not a nuisance *per se,* but one by reason of its location and surrounding conditions, is clearly pointed out; the court saying:

"For in this age, when population is becoming more and more congested in the cities, it would be manifestly unfair to grant injunctive relief only in those cases where the object attacked was a nuisance *per se,* when other circumstances or conditions intervene which might tend to destroy the repose and comfort of a part of a city or town given over to homes.  In this case, as in that, the element of comfort and re-

pose in the enjoyment of the home becomes an essential element of our inquiry. For it is not only shown by the evidence, but it may be accepted as within the common knowledge of man, that the immediate presence of those mute reminders of mortality, the hearse, the chapel, the taking in and carrying out of bodies, the knowledge that within a few feet of the windows of one's dwelling house, where the family sleep and eat and spend their leisure hours, autopsies are going on, that the dead are there, cannot help but have a depressing effect upon the mind of the average person, weakening, as the testimony shows, his physical resistance, and rendering him more susceptible to contagion and disease."

And the following language from *Ross* v. *Butler*, 19 N. J. Eq. 294 (97 Am. Dec. 654), was quoted with approval:

"The law takes care that lawful and useful business shall not be put a stop to on account of every trifling or imaginary annoyance, such as may offend the taste or disturb the nerves of a fastidious or over-refined person. But, on the other hand, it does not allow any one, whatever his circumstances or condition may be, to be driven from his home, or to be compelled to live in it in positive discomfort, although caused by a lawful and useful business carried on in his vicinity. The maxim, '*Sic utere tuo ut alienum non lædas*,' expresses the well-established doctrine of the law."

We are persuaded that the correct result was reached and the proper rule announced by the Washington court. Nor are we able to distinguish in principle the instant case from the recent case of *Barth* v. *Hospital Ass'n*, 196 Mich. 642 (163 N. W. 62). That case was brought to restrain the erection and maintenance of a private insane asylum in a strictly residential district. There, as here, it was contended by the defendants that the maintenance of such an institution was not a nuisance *per se;* that the injury alleged was speculative and imaginary. There, as here,

it was claimed by the plaintiffs that the maintenance
of the institution would make living in the vicinity
uncomfortable, unpleasant, and unsafe; that the men-
tal condition of the residents would be affected by
constant fear, annoyance, and inconvenience. There,
as here, there would be no actual danger if the insti-
tution was properly conducted. It was there held that,
while a hospital is not a nuisance *per se*, it might be
so located and conducted as to be a nuisance to people
living close to it, and that, when a psychopathic hos-
pital was located and conducted in a strictly residen-
tial district, it became such as to the owners of resi-
dential property in close proximity. We might well
say in this case, as was there said by the Chief Jus-
tice, speaking for the majority of the court:

"It must be conceded that the establishment of such
an institution in close proximity to the residences of
the plaintiffs, which are in a residential section of
the city, would destroy the comfort, the well-being,
and the property rights of the plaintiffs."

We do not overlook the contention of the defendants
that the writ of injunction is not one of right, but of
grace. It should not issue out of hand, but should
issue in cases where the right to such relief is clearly
established. Such we find this case to be. We have
here a case of the maintenance of a business which,
while not a nuisance *per se*, is such as to these plain-
tiffs by reason of its location in a strictly residential
district; a business which will cause depression to the
normal person, lowering his vitality, rendering him
more susceptible to disease, and depriving his home
of the comfort, repose, and enjoyment to which he
is entitled. Coupled with this is the substantial finan-
cial loss, due to the depreciation in the value of his
property, and the strong probability that added to
the other discomforts he will be called upon to suffer
will be noxious odors during the summer months.

Such a case appeals to the conscience and discretion of the court, and calls for injunctive relief.

The decree of the court below will be reversed, and one here entered in conformity with the prayer of the bill. Plaintiffs will recover the costs of both courts.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred with FELLOWS, J.

OSTRANDER, J. In view of the decision of this court in *Barth* v. *Hospital Ass'n, supra,* I concur in the result.