Cunningham and others, Respondents, vs. Miller and wife, Appellants.

*June 6—July 8, 1922.*

*Nuisance: Undertaking and embalming establishment in residential district: Abatement.*

1. In an action to restrain the operation of an undertaking establishment in a residential district as a nuisance, the evidence is *held* to support a finding of the trial court that the *locus in quo* was a residential district although churches are about to be erected therein and that the presence of an undertaking and embalming establishment results in a direct damage to plaintiffs' property.

Cunningham v. Miller, 178 Wis. 22.

2. The character of the injury complained of as a nuisance cannot be determined by its effect upon those of peculiarly sensitive feelings, but its actual effect must be judged by the degree of discomfort or injury produced upon the average person.

3. An undertaking establishment in a residential district, operating to materially decrease the market value of residential property and creating dread of contagious diseases and discomfort from the sights, noises, and odors incident to the business, and being a constant reminder of death, constitutes a nuisance.

　　　ESCHWEILER, J., dissents.

APPEAL from a judgment of the circuit court for La Crosse county: JAMES WICKHAM, Judge. *Affirmed.*

This is an action in equity brought to restrain the defendants from using certain property located in the residential section of the city of La Crosse as an undertaking establishment upon the ground that such use constitutes a nuisance *per se* and an unwarrantable invasion of the property rights of the residents in that vicinity.

It appears that for more than twenty years the defendant *Adelbert J. Miller* had conducted a general undertaking business located at 328 Main street, in the center of the business district of the city of La Crosse; he could not renew his lease and purchased the property in question known as number 134 West Avenue South, which prior to that time had been used as a residence. The lot or plat of land on which the building stood had a frontage on West avenue of 115 feet and extended backward to a public alley in the rear, a distance of 293 feet. The property was purchased in November, 1920. The defendants made certain repairs and improvements, not, however, making any structural changes in the house, and installed their undertaking business therein in January, 1921. The plaintiffs, who were adjacent property owners, residents in the immediate locality, commenced this action in March, 1921, seeking a perpetual injunction restraining the defendants from using the premises for an undertaking business, alleging (1) that

the district is an exclusive residence district; (2) that because of funerals having been held from said place and a consciousness that dead bodies may be or are on the *Miller* premises, and because of other reminders of mortality, the neighbors are discommoded and unhappy and their feelings and spirits are depressed, life for them becomes less tolerable, and their bodily resistance to disease is lessened; (3) that odors from the disinfectants used can and do escape to near-by premises; (4) that there is danger of infection and spread of disease; and (5) that the neighborhood has become less desirable as a residence district and property values are accordingly depreciated.

The defendants deny the allegations of the complaint; allege that their business is conducted in a lawful and legitimate way without injury to the plaintiffs or the general public; allege that funerals are held from the premises at infrequent intervals and are but little attended; that the business is conducted in strict compliance with all the laws, rules, and regulations of the state of Wisconsin and ordinances of the city of La Crosse relating thereto. The defendants further claim that the locality is not in fact a strictly residence district; that through rapidly changing conditions West avenue has become a commercial thoroughfare, has lost its character as a residence street, and is building up with amusement places, factories, stores, garages, and other establishments, and in recent years several churches have been built along its course and that another church is about to be built.

The court made the following findings of fact:

"1. That prior to November 10, 1920, each plaintiff owned and occupied as a residence, with his or her family, the respective tracts of land with the dwelling house thereon as alleged in the complaint, and still owns and occupies said property, which residences are all maintained in good condition, and large sums of money have been expended in improving and beautifying the buildings and grounds.

"2. That on November 10, 1920, the defendant *Sophia Miller* purchased and still owns the land which the complaint alleges she purchased, including a valuable building thereon which was formerly used as a residence, on which property the defendant *Adelbert J. Miller,* husband of *Sophia Miller,* has since January 25, 1921, maintained and conducted an undertaking establishment where a large number of bodies of the dead are embalmed and prepared for burial, where funerals are held in some cases, where dissections and autopsies are made in about five per cent. of the cases handled, and where coffins and other materials are stored for use in said business.

"3. That during said time said *Adelbert J. Miller* maintained a sign reading 'Funeral Home' in a conspicuous place on the front of the building, kept a light burning all night in the premises, and conducted said business, including the bringing in and removal of the bodies of the dead at all hours, all of which was visible and the noise incident to the work audible from the street and from the residence of most of the plaintiffs, especially those who lived in close proximity thereto.

"4. That said undertaking establishment has been conducted in as sanitary a manner as is usual in such business, but it is impossible to keep the same entirely free from flies, and that some offensive odors arising from the use of embalming fluids and from dissected bodies at times when autopsies are made, escape therefrom to adjoining premises.

"5. That defendants' premises are located on the west side and facing on West avenue, a street extending in a northerly and southerly direction. It adjoins the residence of the plaintiff *Elsie Gile Scott* on the north and the residence of the plaintiff *Thomas E. Woolley* on the south. The defendants' building is within sixty feet of the *Woolley* residence and a little nearer to the building used as a private garage and residence of the caretaker of the *Scott* premises. The block in which these buildings are located is bounded on the north by Main street, on the south by King street, and on the west by Eleventh street. The next street south of King street is Cass street. The portion of the city of La Crosse lying between Main street on the north and Cass street on the south and extending easterly from

Eleventh street, a distance of five or six blocks, including the premises on the north side of Main street and certain premises south of Cass street, constitute an exclusive residence district, the most valuable in said city, in which many large and expensive residences and many smaller and less expensive ones now are and have been maintained for several years last past, some of the best of which residences are located on West avenue, including the *Scott* residence; and no business house is located within five blocks in any direction from the defendants' premises, except a few scattered business houses to the north, the nearest of which are a drug store and a paint shop on the west side of West avenue in the north half of the block, north of Main street. Residence property on the northeast corner of West avenue and King street has recently been purchased by the Christian Science Church presumably for church purposes, but the evidence is conflicting and not very definite as to the use that is to be made thereof.   West avenue is a street eighty feet in width.   For many years it has been paved with macadam.   It is extensively used for travel.   Most of the travel consists of automobile driving for purposes of pleasure, but the travel includes that of some delivery trucks and a considerable number of funeral processions to cemeteries located in a northerly and an easterly direction from the defendants' premises.

"6. That each of the plaintiffs has suffered damages by reason of the maintenance of said undertaking establishment; that the effect of the continuance of said establishment at said place, as a natural and probable result, would be as follows: To materially decrease the market value of the residences of the plaintiffs; to render such residences materially less desirable as homes; to create in the plaintiffs and members of their families feelings of dread of contagious diseases and feelings of discomfort and dissatisfaction from the sights and noises, and in some instances from the odors incident to said business; and, by the constant reminder of death, to depress the feelings of some of the plaintiffs and members of their families, especially the women, children, and such persons who are ill or of a nervous temperament, such depressed feeling thereby impairing the comfort and happiness of all members of the family.

"7. That said place is an unsuitable and improper place for the maintenance of said undertaking establishment, and its maintenance at said place is a nuisance."

And concluded as a matter of law that plaintiffs were entitled to judgment abating the nuisance and perpetually enjoining and restraining the defendants from the further continuance of an undertaking or embalming establishment or funeral home upon the premises. Judgment was entered accordingly, from which the defendants appeal.

For the appellants there was a brief by *Jesse E. Higbee, Oscar J. Swennes,* and *John F. Doherty,* all of La Crosse, and oral argument by *Mr. Higbee* and *Mr. Doherty.*

For the respondents there was a brief by *Winter, Morris, Esch & Holmes* and *George H. Gordon, Law & Gordon,* all of La Crosse, and oral argument by *George H. Gordon.*

ROSENBERRY, J. The judgment is challenged upon two grounds: first, that the evidence does not support the findings of fact made by the court; second, the findings do not support the judgment. We have carefully reviewed the record in this case in the light of the arguments presented by counsel and are convinced that there is ample evidence to sustain the findings of the trial court. No useful purpose would be served by setting out the evidence in great detail. The essential facts are stated in the findings of the trial court, which have been set out at length in the statement of facts.

The argument that the property is not located in a district occupied exclusively by residences is not persuasive. It appears from the evidence that in prior years certain wealthy residents of the city of La Crosse erected very elaborate homes in this vicinity, which, by reason of death and removal from the city, had been vacated by their original owners and they are not readily salable for anything like the amount of their original cost. It is argued that

this depreciation is due to the gradual encroachment of the business section of the city upon the residence district and not to the alleged nuisance. There is no zoning ordinance in the city of La Crosse or other law or regulation directly affecting the condition existing in reference to the property in question. We think the evidence ample to sustain the finding that the *locus in quo* is a residential district; nor do we think the fact that churches have been or are about to be erected in or near the vicinity materially alters the situation. The churches are not generally or usually associated with the business district of a city. Neither is the presence of a church such a disturbing factor in the life of a community as is the presence of an undertaking and embalming establishment. We make special reference to this feature for the reason that it has been greatly emphasized and it is somewhat difficult to allocate the depreciation of property to the several causes which may have brought it about. We think, however, that the finding of the trial court that the presence of an undertaking and embalming establishment results in direct damage to the property rights of the plaintiffs is not against, but is supported by, the clear preponderance of the evidence.

The question of whether or not the findings support the judgment raises a question of law which, so far as we are advised, has not heretofore been directly passed upon by this court. Is the business of preparing dead bodies for burial with the necessary incidents thereof, including the making of post-mortems, the holding of funerals, and the removal of dead bodies to and from the premises, a nuisance when located and carried on in the residential section of a city? This question has been considered by the courts of other states, which have arrived at conclusions that are widely varying. No doubt in this as in other cases involving nuisances, a rule cannot be laid down to govern all cases. Each case must depend largely upon the particu-

lar circumstances which characterize it. *McCann v. Strang,* 97 Wis. 551, 72 N. W. 1117.

The injury complained of must be substantial and tangible and the discomfort created thereby susceptible to the senses of ordinary people. Its character cannot be determined by its effect upon those of peculiarly sensitive feelings. Its actual effect must be judged by the degree of discomfort and injury produced upon the average person. *Stadler v. Grieben,* 61 Wis. 500, 21 N. W. 629; *Pennoyer v. Allen,* 56 Wis. 502, 14 N. W. 609; *Wahrer v. Aldrich,* 161 Wis. 36, 152 N. W. 456.

While the circumstances are not the same in any two cases, we think it is well established that a person must use his property with reference to the health, comfort, and reasonable enjoyment of public or private rights by others. In order to warrant the interference of a court of equity the acts complained of must be such as are offensive to the physical sense and by reason of such offensiveness make life uncomfortable. As has been said, the result is not to be measured by its effect upon those of extreme sensitiveness. On the other hand, it is not to be measured by its effect upon those who have been accustomed to endure acts such as are complained of without annoyance. It appears in this case that the maintenance of the undertaking and embalming business has operated to materially decrease the market value of the residences owned by the plaintiffs, has rendered such residences materially less desirable as homes, created in the plaintiffs and members of their families feelings of dread of contagious diseases and feelings of discomfort and dissatisfaction from the sights, noises, and odors incident to the business, and by the constant reminder of death the feelings of some of the plaintiffs and members of their families have been depressed to an extent which appreciably impairs their comfort and happiness.

The great weight of authority in this country is to the

effect that the establishment and operation of an undertaking and embalming business in a residential section under such circumstances constitutes a nuisance. *Saier v. Joy,* 198 Mich. 295, 164 N. W. 507; *Densmore v. Evergreen Camp No. 147, W. O. W.* 61 Wash. 230, 112 Pac. 255; *Stotler v. Rochelle,* 83 Kan. 86, 109 Pac. 788, 29 L. R. A. N. S. 49; *Barnes v. Hathorn,* 54 Me. 124; *Cleveland v. Citizens G. L. Co.* 20 N. J. Eq. 201; *Barth v. Christian P. H. Asso.* 196 Mich. 642, 163 N. W. 62; *Middlestadt v. Waupaca S. & P. Co.* 93 Wis. 1, 66 N. W. 713.

While there are cases which hold the contrary doctrine, we think the rule as stated is the sounder and better rule. As was said by the supreme court of the state of Michigan: "It requires no deep research in psychology to reach the conclusion that a constant reminder of death has a depressing influence upon the normal person." *Saier v. Joy, supra.*

We think it is equally clear that maintenance of an undertaking and embalming establishment in a residential section must inevitably operate to decrease substantially property values, destroy the comfort and happiness of people residing in the immediate vicinity, and is an unwarrantable invasion of the rights of others.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J. (*dissenting*). The appellants in this case having purchased certain real estate in a portion of the city of La Crosse where real estate for residence purposes was, from the natural course of events, depreciating rather than appreciating in value, are by the judgment herein prevented from using such real estate in the carrying on of a lawful and absolutely necessary business and on various grounds as stated in the sixth finding of fact quoted in the statement of facts above. That is because its presence decreased the market value of plaintiffs' residence property and rendered that property less desirable as homes; because

it created feelings of dread of contagious diseases, of discomfort and dissatisfaction; because of some instances of odors incident to the business; and because, being a constant reminder of death, it depresses the feelings of the respective families of the plaintiffs, especially the women and children and persons who are ill or of a nervous temperament, such depressed feelings thereby impairing the comfort and happiness of all members of the several families.

I think the effect of this decision is to carry the doctrine of the right of a court of equity to interfere with the lawful use by another of the latter's property far beyond the heretofore generally accepted doctrine in that regard.

An undertaking establishment when conducted properly—and no question is here raised but that the defendants exercised proper, reasonable, and more than ordinary care in the conducting of the business—is not a nuisance *per se* even when such undertaking establishment is located in a residence section of a city. 20 Ruling Case Law, 455; 29 Cyc. 1183.

It is necessary, therefore, that there should be some particular situation presented which makes that which is not a nuisance *per se* a special or particular nuisance. That the lawful use of defendants' property may lessen the selling value of plaintiffs' property is not a sufficient basis upon which the right to an injunction of this kind can be predicated. *Northfield v. Atlantic Co.* 85 N. J. Eq. 47, 95 Atl. 745.

The effect which a claimed nuisance has upon the exceptional individual is not the accepted standard. Its effect upon the sensibilities of the great mass of mankind or average citizen is the standard. 2 Cooley, Torts (3d ed.) 1245; 29 Cyc. 1192. Yet in this case relief was granted upon the idea that the existence of this undertaking establishment did have a depressing effect upon those of nervous temperaments, evidently considering them as differentiated from persons of the normal or ordinary temperament.

The majority opinion cites seven cases as supporting the conclusion that the establishment and operation of an undertaking and embalming business in a residential district under such circumstances as here disclosed constitutes a nuisance. But two of them involve anything like the business here involved.

*Stotler v. Rochelle,* 83 Kan. 86, 109 Pac. 788, 29 L. R. A. N. s. 49, involved the erection of a hospital for the treatment of cancer.

*Cleveland v. Citizens G. L. Co.* 20 N. J. Eq. 201, concerned the establishment of a gas works.

*Barnes v. Hathorn,* 54 Me. 124, concerned the maintaining of dead bodies in an overground family tomb adjacent to plaintiff's residence.

*Barth v. Christian P. H. Asso.* 196 Mich. 642, 163 N. W. 62, held that the complaint there sufficiently alleged facts showing the right to interfere with the proposed erection of an insane asylum.

*Middlestadt v. Waupaca S. & P. Co.* 93 Wis. 1, 66 N. W. 713, upheld an injunction to prevent the deposit of refuse from a starch factory polluting a river to the injury of a lower riparian owner.

The only ones so cited involving an undertaking establishment are *Densmore v. Evergreen Camp No. 147, W. O. W.* 61 Wash. 230, 112 Pac. 255, where the building proposed to be used for such purpose was but three or four feet from the plaintiff's residence, and the evidence showed danger of infection and contagion; and *Saier v. Joy,* 198 Mich. 295, 164 N. W. 507, where the proposed establishment was within thirteen and one-half feet of residence property, and with a finding that noxious gases did reach the adjacent houses.

In the case at bar there is an open space of sixty-five feet on one side and seventy-five feet on the other between defendants' place and the nearest residences, and no substantial showing of actual or threatened harm.

In my opinion the plaintiffs failed to show a reasonable basis for the judgment they have obtained. The situation here is substantially different than if such attempted exclusion had been based upon some reasonable, valid zoning ordinance, as illustrated by such cases as *St. Paul v. Kessler*, 146 Minn. 124, 178 N. W. 171, and *Meagher v. Kessler*, 147 Minn. 182, 179 N. W. 732, where all within prescribed limits are treated alike and where the limitations are by the public authorities and are known before a purchase is made.

In any event I think that no more should have been done than direct that any particular features of defendants' business or way of conducting it should have been prohibited rather than the business as an entirety. If the sign or night light or some other feature were too remindful of the depressing idea of the inevitable mortality which surrounds us from the cradle to the undertaking establishment and which the contemplative mind cannot escape having recalled to him by falling leaf, November wind, and the newspaper accounts of Sunday automobile accidents—all beyond remedy by injunction,—then such particular objectionable features might be eliminated or changed by injunction rather than the entire destruction of a going and legitimate business. Such milder form of cure was recognized in cases like *Mackenzie v. Frank M. Pauli Co.* 207 Mich. 456, 174 N. W. 161; *Weaver v. Kuchler,* 17 Okla. 189, 199, 87 Pac. 600.