Argued at Pendleton October 27, affirmed December 8, 1925, rehearing denied February 23, 1926.

# JOHN I. STODDARD ET AL. *v.* LOT L. SNODGRASS ET AL.

### (241 Pac. 73.)

**Nuisance — Conducting Undertaking Establishment not Nuisance Per Se.**

1. The business of conducting an undertaking establishment is not a nuisance *per se.*

**Nuisance—Conducting Undertaking Establishment in Residential District not Restrained, Where Sole Injury Depressing Effect on Near-by Residents.**

2. Injunctive relief will not be granted to restrain conducting of undertaking establishment in residential district, where it is properly and sanitarily conducted, and only injury to plaintiffs is mental, rather than physical, in that conducting of business has a depressing effect on certain members of plaintiffs' families.

**Nuisance—Properly Conducted Undertaking Business not Enjoined, Where Great Loss and Hardship Would Result.**

3. Where defendants expended large sums of money in constructing building and preparing it for carrying on undertaking business, and plaintiffs, on bringing suit to restrain such business, gave no undertaking, and no preliminary order was issued, relief will not be granted, where business was properly and sanitarily conducted.

---

Nuisances, 29 **Cyc.**, p. 1183, n. 44, p. 1191, n. 5, 7, 8, p. 1192, n. 17, 18, 21, 26, 27, 28.

From Union: H. H. BELT, Judge.

In Banc.

AFFIRMED.    REHEARING DENIED.

For appellants there was a brief over the name of *Messrs. Smith & Anderson,* with oral arguments by *Mr. Gustav Anderson* and *Mr. F. S. Ivanhoe.*

1. Conducting undertaking establishment as nuisance, see notes in Ann. Cas. 1912B, 1208; 31 L. R. A. (N. S.) 608; L. R. A. 1918A, 829; 23 A. L. R. 745. See, also, 20 R. C. L. 455.

2. See 20 R. C. L. 382.

For respondents there was a brief over the name of
*Messrs. Cochran & Eberhard,* with oral arguments by
*Mr. Robert S. Eakin* and *Mr. George T. Cochran.*

RAND, J.—This suit was brought to restrain the
defendants from maintaining an undertaking estab-
lishment on the corner of Pennsylvania Avenue and
Fourth Street in the City of La Grande.  For about
ten years before the commencement of the suit de-
fendants and their predecessors had conducted said
business on the opposite side of Fourth Street and
almost immediately across the street from where the
business is now being conducted.  They bought the
property on which the building in question stands
and constructed the building at an expense of about
$45,000.  Before doing so they applied to the con-
stituted authorities of the City of La Grande for
permission to build the building and to use the same
for carrying on their said business.  Plaintiffs ob-
jected to the granting of such permission, but it was
granted.  Shortly after defendants had commenced to
construct said building plaintiffs commenced this suit
and prayed for a temporary restraining order, but no
undertaking was given and no restraining order was
issued.  At the time of the trial defendants had occu-
pied and conducted their business in said building for
about two months.  There is no zoning ordinance or
enactment prohibiting the maintenance of an under-
taking establishment at said place.  The defendants
had decree and plaintiffs appealed.

The plaintiffs are eleven in number.  They each
own and occupy a dwelling-house in that immediate
vicinity.  The property of one of the plaintiffs ad-
joins that of the defendants, the distance between his
dwelling-house and the building in question being

about twenty or twenty-five feet. There are two churches in the immediate neighborhood of plaintiffs' property, but, except for said churches and the undertaking establishment of plaintiffs, that part of the city has been and still is devoted exclusively to residence purposes. There is no dispute as to any of these facts.

Plaintiffs base their right to injunctive relief upon the allegations of the complaint to the effect that the carrying on of defendants' business will require the use of chemicals and that the use thereof will taint and pollute the air with noxious, disagreeable and offensive odors; that the bodies of persons who have died of contagious diseases will be brought to and prepared for burial in said building and will result in the spread of contagious diseases; that the use of said property for said purpose has depreciated the value of plaintiffs' property; that the frequent bringing and removal of dead human bodies to and from said building and their being kept in said building for the purpose of preparing them for burial, the going and coming of ambulances and hearses, the holding of funeral services and the congregation of people at said services will be a constant reminder of mortality, which will have a depressing and deleterious effect upon the physical and mental condition of plaintiffs and of the members of their families which will render them more susceptible to disease, and will deprive plaintiffs of the right to enjoy the comfort and repose of their homes.

There was no evidence tending to show that any disease has ever been communicated to anyone from the conduct of said business by plaintiffs or their predecessors, nor was there any evidence tending to show that any noxious fumes or gases have ever been

detected by anyone outside of said building. There was some evidence tending to show that by reason of the business being conducted at said place the value of property in that immediate neighborhood has depreciated to some extent, but this evidence was contradicted and no satisfactory explanation was given why the change of the location of the business from an old building to a new and expensive structure almost immediately across the street should cause a depreciation of the value of property in that immediate neighborhood. The case, therefore, presents the sole question of whether, in the absence of some enactment under the police power of the state restricting the use of property, plaintiffs are entitled to injunctive relief upon the sole ground that the presence in the immediate neighborhood of their homes and in a residential district of the City of La Grande of an undertaking establishment properly and sanitarily conducted, with its attendant receipt, removal and preparation for burial of dead human bodies, the frequent passing and repassing in plain view of ambulances and hearses known to contain such bodies, the conducting of funeral services and the collection of crowds attending thereat, would have such a deleterious and depressing effect upon the minds of normal persons living in the immediate vicinity thereof that it would render them more susceptible to contracting disease or would excite sufficient dread or terror to deprive them of the comfort and enjoyment of their homes. This question is one of first impression in this court.

Plaintiffs rely upon *Densmore* v. *Evergreen Camp No. 147*, 61 Wash. 230 (112 Pac. 255, Ann. Cas. 1912B, 1206, 31 L. R. A. (N. S.) 608); *Saier* v. *Joy*, 198 Mich. 295 (164 N. W. 507, L. R. A. 1918A, 825);

*Cunningham* v. *Miller,* 178 Wis. 22 (189 N. W. 531, 23 A. L. R. 739); *Leland* v. *Turner,* 117 Kan. 294 (230 Pac. 1061).

In the first case cited it was, in effect, held that the maintenance of an undertaking establishment in a residence part of a city, within a few feet of neighboring residences, may be enjoined by their owners as a nuisance in view of the probable interference with the comfortable enjoyment of their property by the depressing effect of reminders of mortality and the escape of noxious odors and gases from the chemicals used in the business. This broad and unqualified statement of the law seems to have been somewhat restricted by that court in *Rea* v. *Tacoma Mausoleum Assn.,* 103 Wash. 429 (174 Pac. 961, 1 A. L. R. 541, 545), where the court said:

"No decision has been called to our attention wherein any court has awarded injunctive relief, rested upon the sole ground of the mere presence of a cemetery or other place of sepulture, unattended by injurious or offensive drainage or fumes, sensible to the complaining party, and our own search leads us to believe that no such decisions have been rendered. * *

"The Densmore Case involved the right of the plaintiff to injunctive relief, as against the maintenance of an undertaking establishment very close to his residence. That decision may seem to contain observations lending some support to the contentions of counsel for appellants, but, when critically read, we think it will be found not to rest upon the mere unpleasantness attending the close proximity of dead bodies, but also upon the fact, as therein stated, that 'there is evidence tending to show that noxious odors, gases, especially those arising from the deodorants used in cleansing the premises, would permeate the homes of respondents; there is danger of infection and contagion from the proximity of the morgue,

and the possibility of flies passing from one place to the other.' "

Again, in *Linsler* v. *Booth Undertaking Co.,* 120 Wash. 177 (206 Pac. 976), which was a suit brought by the owners of adjacent and near-by property and a school district to restrain the defendant from conducting an undertaking establishment which was located within a district where the carrying on of such business was authorized by an ordinance of that city, that court refused to restrain the defendant, and, referring to the Densmore case, said that that case "is distinguishable. There, there was no ordinance of the city of Everett authorizing the undertaking establishment in the place where it was conducted, while here, as already pointed out, the respondent's business is located within the district prescribed by the ordinance for such purpose. That may be a nuisance which exists without authority of law, yet not a nuisance if so authorized."

Here, defendants were authorized by the city to conduct their business at the place where it is now being conducted, although it does not appear that such authority was conferred by ordinance,—the manner in which the authority was conferred is not shown, but it would seem that even under the law as announced by the Washington decisions, defendants, being authorized by the city to conduct their business at said place, could not be enjoined from conducting their business at the suit of adjacent or near-by owners, unless it was shown that the business, as conducted, was a nuisance.

The Michigan case cited followed and applied the same doctrines that were announced in the Densmore case, while in the Wisconsin case cited the decision was based upon a finding of fact which recited that

"it is impossible to keep the same entirely free from flies, and that some offensive odors arising from the use of embalming fluids and from dissected bodies at times when autopsies are made escape therefrom to adjoining premises."

In the Kansas case cited there was an ordinance making it unlawful to maintain an undertaking establishment at the place where it was being conducted. That case, therefore, and other cases where similar ordinances were involved, are not in point.

1, 2. The business of conducting an undertaking establishment is not a nuisance *per se.* It is not only a useful and necessary occupation, but it is one that is absolutely essential to the welfare and good order of society. The carrying on of this business at the place involved was not prohibited by any statute or ordinance, and the evidence shows that, as conducted by defendants, the establishment was not a nuisance in any legal sense, since nothing injurious to life or property or anything offensive to the physical senses resulted therefrom. The only injury complained of is that the conduct of the business in the immediate vicinity of plaintiffs' homes had a depressing effect upon certain members of plaintiffs' families by reason of its frequent reminder of mortality. The injury complained of was mental rather than physical, and was one which did not affect all persons alike, but only affected those who were overnervous or supersensitive. This was not sufficient to entitle plaintiffs to the relief sought. Since the injury was mental rather than physical, the effect complained of must be one which would be shared by normal persons and not by those only who are overnervous and supersensitive. The law cannot take notice of things which are not offensive to normal persons. If it did, there would be no limit to litigation. The principle

is stated in Cooley on Torts (2 ed.), Section 604, as follows:

"The only true rule in judging of injuries from alleged nuisances is declared to be, 'such as naturally and necessarily result to all alike who come within their influence. Not to one on account of peculiar sentiments, feelings or tastes, if it would have no effect on another, or all others without these peculiar sentiments or tastes. Not to a sectarian if it would not be to one belonging to no church. It must be something about the effects of which all agree; otherwise that which might be no nuisance to the majority might be claimed to deteriorate property by particular persons. Noises which disturb sleep, bodily rest a physical necessity, noxious gases, sickening smells, corrupted waters and the like, usually affect the mass of community in one and the same way, and may be testified to by all possessed of their natural senses, and can be judged of by their probable effect on health and comfort, and in this way damages may be perceived and estimated. Not so of that which only affects thought or meditation. What would disturb one in his reflections might not disturb another. There can be no general rule or experience as to this; it is incapable of being judged of, like those things which affect health or comfort.' "

Again, he says:

"Here, as in the cases before referred to, the disturbance was only mental. Such cases may become common-law nuisances if noisy and riotous proceedings are suffered, and if disorderly people are allowed to gather in them for their customary practices. But the nuisance is then in the disorder, not in the business itself. If the mental disquietude they occasion could give a right of action, the question of locality would be of little importance, and one might be specially inconvenienced by a nuisance in a distant town as well as by one near him."

We think that the principles which should govern this case are announced in the case of *Westcott* v. *Middleton*, 43 N. J. Eq. 478, 486 (11 Atl. 490, 494), where that court quoted with approval from a decision of an English judge as follows:

"In this case, then, we have the broad, yet perfectly perceptible or tangible, ground or principle announced, that the injury must be physical, as distinguished from purely imaginative. It must be something that produces real discomfort or annoyance through the medium of the senses; not from delicacy of taste or a refined fancy. This is very comprehensive; indeed, I cannot conceive of a more liberal or broad statement of the law; yet I apprehend it is a true delineation of the law."

And then said:

"The results of my inquiries are that while the defendant has no right to conduct his business so as to endanger or threaten the health of the complainant, or to make his home uncomfortable, either by filling the air with noxious vapors, or the germs or seeds of disease, the evidence does not show that he has done either, and that the business of an undertaker is not a nuisance *per se.*"

In *Dean* v. *Powell Undertaking Co.*, 55 Cal. App. 545 (203 Pac. 1015), the court, after an exhaustive consideration of the authorities bearing upon this question, refused to enjoin the maintenance of an undertaking establishment in a residential district and based its decision largely upon the New Jersey case cited.

3. Another reason exists in this case which we think would make it inequitable to sustain the contention of plaintiffs. While this suit was brought shortly after the commencement by defendants of the con-

struction of the building in which they are now conducting their business and a preliminary injunction was prayed for, no undertaking was given and no preliminary order was issued. Since the defendants have expended large sums of money in constructing the building and preparing the same for carrying on the business,—should they be enjoined from conducting their business in said building, it would result in great loss and hardship to them. The evidence shows that they have conducted their business in a proper and sanitary manner and in accordance with the rules and regulations of the health department of the state, and that they have used nothing but approved, up to date and scientific methods. No physical injury has resulted to anyone by their conduct of their business, so far as the record shows. While the presence of this establishment at this place may be distasteful to certain residents of that neighborhood, this court has no power to enjoin the defendants from conducting their business so long as it is conducted in the manner disclosed by the evidence.

For these reasons the decree of the lower court must be affirmed. AFFIRMED. REHEARING DENIED.

Justices BURNETT and BELT took no part in the consideration of this case.