ELIOT MELDAHL et al., for Themselves and for the Benefit of Those Persons Like Situated, Appellants, v. N. O. HOLBERG, Respondent.

(214 N. W. 802.)

**Nuisance — undertaking business, not per se.**

1. An undertaking establishment is not a nuisance, per se.

**Nuisance — business may become.**

2. The manner and place in which a legitimate business is being conducted may cause it to become a nuisance. Such case must be determined by its own state of facts.

---

Annotation.— (1) On the question as to when undertaking establishment may be considered nuisance, see annotation in 31 L.R.A. (N.S.) 608; L.R.A. 1918A, 829; 23 A.L.R. 745; 43 A.L.R. 1171; 20 R. C. L. 455; 3 R. C. L. Supp. 1075; 5 R. C. L. Supp. 1108.

Nuisance — finding that certain business not a nuisance, injunction prop-
    erly dismssed.

3. Evidence examined and held that the proposed undertaking establishment
was not situated in an exclusively residential district, but in one which was
gradually changing to a business district; and that it was situated such a
distance from residences and was being conducted in such a manner as not to
constitute a nuisance.

Opinion filed July 13, 1927.

Nuisances, 29 Cyc. p. 1157 n. 31; p. 1158 n. 39, 40; p. 1183 n. 44; p. 1247 n. 48.

Appeal from the District Court of Barnes County, *Cole*, J.
Affirmed.

*Ritchie & Ployhar,* for appellants.

"While an undertaking establishment, including a morgue, is not a
nuisance per se, its maintenance on one of the principal residence
streets of a city is a nuisance or to owners of near-by property, whose
property will be reduced in value by the maintenance and conduct
of such business." Saier v. Joy, 198 Mich. 295, 164 N. W. 507.

"The maintenance of an undertaking establishment in a residence
part of the city within a few feet of neighboring residences may be
enjoined by their owners as a nuisance." Densmore v. Evergreen
Camp, W. W. 61 Wash. 230, 31 L.R.A.(N.S.) 608, 112 Pac. 255.

*A. P. Paulson,* for respondent.

"The injury or annoyance which will warrant relief against an
alleged nuisance must be of a real and substantial character." State
v. Moore, 31 Conn. 479, 83 Am. Dec. 159; Nelson v. Milligan, 151
Ill. 462, 38 N. E. 239.

"It must be such an injury as impairs the ordinary enjoyment,
physically, of the property within its sphere." Clinton Iron Co. v.
Dye, 87 Ala. 468, 6 So. 192.

"For if the injury or inconvenience be merely theoretical, or if
it be slight or trivial or fanciful, or one of mere delicacy, or fastidious-
ness, there is no nuisance in a legal sense." Nelson v. Milligan, 151
Ill. 462, 38 N. E. 239; Wade v. Miller, 188 Mass. 6, 69 L.R.A. 820,
73 N. E. 848.

"The law will not declare a thing a nuisance because it is unsightly
or disfigured, because it is not in a proper and suitable condition, or

because it is unpleasant to the eye and a violation of the rules of propriety and good taste." Woodstock Burying Ground Asso. v. Hager, 68 Vt. 488, 35 Atl. 431.

BURR, J. Plaintiffs, for themselves and others, seek to restrain the defendant from repairing and altering a building situated on lot 6 in block 30 of the original plat of Valley City so as to establish what is known as a "Funeral Home." Plaintiffs claim that such acts will result in the establishment of a nuisance as to them and will be "an unwarrantable invasion of the property rights of the residents in that vicinity."

The complaint does not claim that there is any danger of contagion or that noxious gases or such like nuisance will arise. The contention is that this "Funeral Home" is being established in a district purely residential, in close proximity to homes, is obnoxious to the residents, will disturb the comfort and repose of their homes, and will result in an unwarranted depreciation of their property. The trial court refused to grant an injunction and the plaintiffs appeal. There is no dispute between the parties as to the basic principles of law governing this case. The difficulty arises in the application of the law to the facts. An undertaking establishment is not a nuisance per se, even though maintained in a populous section of the city. Westcott v. Middleton, 43 N. J. Eq. 478, 11 Atl. 490, 20 R. C. L. 455. It is a lawful business, no matter where conducted within the city, unless prohibited by ordinance, and it is admitted there is no ordinance in Valley City governing this case. Wasem v. Fargo, 49 N. D. 169, 172, 25 A.L.R. 758, 190 N. W. 546. If a nuisance at all, it must be because of the manner in which it is used or the situation in which it is placed. To this extent the locality selected for the establishment becomes an important factor. An undertaking establishment is essentially a business enterprise. In determining whether it is to become a nuisance or will be a nuisance we cannot judge it by its effect upon those of "peculiarly sensitive feelings, but its actual effect must be judged by the degree of discomfort or injury produced upon the average person." Cunningham v. Miller, 178 Wis. 22, 23 A.L.R. 739, 189 N. W. 531. "Physical discomfort arising from a morbid taste or an excited imagination as distinguished from such discomfort arising from the organs of sense,

common to all, is not enough to justify the court in closing such an establishment." Westcott v. Middleton, supra. See also Densmore v. Evergreen Camp, W. W. 61 Wash. 230, 31 L.R.A.(N.S.) 608, 112 Pac. 255, Ann. Cas. 1912B, 1206.

In cases involving undertaking establishments locality is an important factor, for what may be a nuisance in one locality may not be so in another. Thus, it is uniformly held that location of an undertaking establishment in an exclusively residential portion of the city is a nuisance, Tureman v. Ketterlin, 304 Mo. 221, 43 A.L.R. 1155, 263 S. W. 202, even though ordinarily such business is not considered a nuisance. See also Kaufman v. Stein, 138 Ind. 49, 46 Am. St. Rep. 368, 37 N. E. 333, where the question of locality determines the character of the place. In Beisel v. Crosby, 104 Neb. 643, 178 N. W. 272, a dwelling house was being converted into an undertaking establishment in an exclusively residential district, and within a few feet of the windows of plaintiff's home, and at least a block and a half away from the nearest business place. This was held to be a nuisance. In Higgins v. Bloch, 213 Ala. 209, 104 So. 429, the undertaking parlor is about 3 feet from one residence and 10 feet from another, in an exclusively residential portion of the city of Mobile. In St. Paul v. Kessler, 146 Minn. 127, 178 N. W. 171, the right of the city to establish zones prohibiting undertaking establishments in "districts of a city occupied exclusively for residences," was upheld. Another factor to consider is the changing character of a locality. The growth of a residential district in a city in the direction of an established business may eventually render such business a nuisance. People v. Detroit White Lead Works, 82 Mich. 471, 9 L.R.A. 722, 46 N. W. 735, while a locality that was originally exclusively residential may gradually change to a business district. In Tureman v. Ketterlin, supra, the character of the district was gradually changing from residence to business but the proposed business was located immediately adjoining residences on both sides with the garage immediately under bedroom windows. But where there is no immediate proximity, nor any special feature to render the place obnoxious, it is merely a business. In the latter case the annoyance incident to a business cannot be complained of. 29 Cyc. 1158. See also Euclid v. Ambler Realty Co. 272 U. S. 365, 71 L. ed. 303, — A.L.R. —, 47 Sup. Ct. Rep. 114. Some-

times the manner of operation may be the controlling factor in determining whether it is a nuisance. In Goodrich v. Starrett, 108 Wash. 437, 184 Pac. 220, it was sought to convert a dwelling house surrounded by residences into an undertaking establishment and the evidence showed disagreeable odors, plague of flies, exposure to contagion and no proper sewer connections. In Saier v. Joy, 198 Mich. 295, L.R.A. 1918A, 825, 164 N. W. 508, the alleged nuisance was within 13½ feet of the residence, and emitted noxious gases. It is clear, therefore, that whether or not such a place is a nuisance depends upon the facts in the particular case. The case of Tureman v. Ketterlin, supra, resembles the case at bar, but is quite distinguishable.

The undisputed facts are: There is no zoning law or ordinance in Valley City. Fifth avenue is the main thoroughfare in Valley City and runs from the northern limits of the city south across the N. P. Railway to the Normal bridge on the Sheyenne river. From a point several blocks north of the N. P. tracks the business section of the city extends south along both sides of this thoroughfare, past block 22 on the west side of the avenue and block 23 on the east side of the avenue. Going south, we have on the west side block 22, which is purely a business block, then block 31 to the south, and block 34 next south. On the east side of the avenue we have, opposite block 22, block 23, which is purely a business block, south of this, block 30, and next south block 35. This block 30 has a 20 foot alley running north and south through the center of the block. On the west side of the alley, and therefore fronting Fifth avenue, we have lots 1 to 6, inclusive, numbered from north to south and on the east side of the alley and of the block we have lots 7 to 12, inclusive, numbered from the south to the north. Third street runs east and west between block 23 and block 30, and on lot 1 of block 30, being in the northwest corner of block 30, is the Standard Oil service station. This filling station was built in the summer of 1926, and to do this a residence building had to be removed, thus showing business encroachment. Next south from the Standard Oil service station is an apartment house known as the Colonial Flats, located on lots 2 and 3. Next south on lot 4 we have the residence of the plaintiff Meldahl, 65 feet north of the "Funeral Home." On lot 6 in the southwest corner of the block is the building sought to be converted into the undertaking establishment.

East of lot 6 and across the alley in this same block is lot 7, on which plaintiff Connors has her home, over 80 feet from the undertaking establishment. Directly east of lot 1, and situated on the west side of lots 10, 11, 12, is a large livery barn now used as a warehouse. And on the east side of the same lots is a cream station, the Codding store, and the Amundson tin shop. Thus, the major portion of the block is already a business section, if we include this undertaking parlor. Across Fifth avenue in block 31, directly west from this proposed establishment, we have some residence property and north of the residence property is block 31, and almost directly west of the Colonial Flats, are the Sheyenne Flats, and north again on the same block the residence known as the Smith residence, which is to be changed into a garage. Directly south of this lot six in block 30 is Second street which separates the block from block 35. On this block 35 is situated the Norwegian Methodist Church and parsonage, and Wesley hall, a public building under the auspices of the Methodist Church, used for the accommodation of normal school students. Plaintiffs Fletcher and Canning have their residences in this block. Directly west of this block 35, and diagonally across from lot six, in block 30, is block 34. All of the east side of this block is owned by the Episcopal Church, and has two buildings thereon, a rented residence and the Episcopal hall, a public building devoted to the accommodation of students attending the normal school.

On this lot 6 there has been for years a two-story dwelling house about 30 feet in width from the north to the south, and about 40 feet in length from the east to west. This house is set back from Fifth avenue some distance, and it is the intention of the defendant, unless enjoined, to add 16 feet to the west end, thus bringing it down to Fifth avenue. He purposes to add an addition 8x20 feet on the south side of the residence joining the new addition and extending eastward. It is his design to have on the first floor an office, a reception room, and toward the center of the building a chapel with a south entrance. On the south side there will be a display room for caskets, etc., and back of this will be his operating room. On the second floor will be his own residence. This establishment, therefore, will be on the southwest corner of block 30, and on Fifth avenue and Second street. All streets and avenues are 80 feet in width. From our survey of the case we find

but two exclusive residences in the whole block—the Meldahl residence to the north of this proposed business and 65 feet away, and the Connors residence to the east a distance of 80 feet and across the alley. We find also the Colonial Apartments which are rented to tenants. All the rest of the block is already a business block, and no other residence is within 100 feet of this place. It is not disputed by the interested parties that Valley City is a progressive and a growing city, and, as in all growing cities, the development of the business interests will encroach upon the residence district. It is established that the growth of this business district is southward. Possibly this was in the mind of the city council, for it is agreed that the council was importuned to interfere in this conversion of a residence building into an undertaking establishment, and refused to interfere. Hence the establishment of this business is merely in keeping with the growth of the business district. It is alleged in the defendant's brief, and not disputed, that this location is in harmony with the location of the cemeteries in the city, permitting funeral possessions to pass to the cemeteries without going through the business districts. It is a fact that many people have an antipathy to proximity to such an establishment, because of the thoughts which arise in the mind, but, as pointed out before, it requires more than this to enjoin a business. As stated in Nelson v. Mulligan, 151 Ill. 462, 38 N. E. 239, the injury or inconvenience must be more than a matter of mere delicacy or fastidiousness; it must be more than merely theoretical or fanciful. Higgins v. Bloch, 213 Ala. 209, 104 So. 431. There must be actual damage shown which will cause depreciation of property and disturb the comfort and repose of average people for this is the cause relied upon for the injunction. Some near-by residents testified to a feeling of dread and instinctive antipathy to the thought of such an establishment so near them. Plaintiff Meldahl thought such a building 65 feet from him would disturb his happiness. North from him in the same block, and not much farther, a residence had been removed and a business building erected, but if the "Home" were across the street to the north no one could complain. If it were to be established within a foot or two of his place, and in a block wholly residential, he would be in position to complain, as in the case of Densmore v. Evergreen Camp., W. W. 61 Wash. 230, 31 L.R.A. (N.S.) 608, 112 Pac. 255, Ann. Cas. 1912B, 1206; but distance

55 N. Dak.—34.

becomes an important factor in a city. If 65 feet away causes this dread, where will the limit be placed?

The main contention of the plaintiffs is that this undertaking establishment will have the effect of depreciating the value of their residential property. If the character of the locality be changing on account of the steady encroachment of business interests such depreciation of value cannot be recoverable. To recover damages in this case for depreciation of property it must be shown that this depreciation is caused, not by the encroachment of the business section but by this particular undertaking establishment. Cunningham v. Miller, supra. The burden of proving this depreciation in value is upon the plaintiffs. The evidence introduced is far from satisfactory. None of the defendants appear to know anything about the value of real estate. Being the owners of the property they were permitted to testify as to what this value is in their opinion, but no one seems to know the actual values and no one furnishes any criterion by which we may judge. There was no proof of sales, or even of bona fide offers. There was no proof whatever as to the value before the proposed business was established and values thereafter, nor any attempt to show that such difference if any could be shown, was attributable in a great measure to this so-called "Funeral Home."

The trial court examined the matter carefully, inspected the location, and reached the conclusion that the proposed establishment is not a nuisance; that no damage had been proved; that the general business expansion in Valley City was toward the south; and that this business establishment was but the natural result of this growth. The court found the proposed business a necessity for the city, and that there is no proof whatever showing that it would not be conducted in an inoffensive manner. There is no real proof of depreciation of property attributable to this business; the distance from homes is sufficient to dispose of morbid objections and mental depression that might otherwise warrant interference, and so the judgment of the lower court is affirmed.

BIRDZELL, Ch. J., and BURKE, NUESSLE, and CHRISTIANSON, JJ., concur.